**Rebecca CROSS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17830.**

United States Court of Appeals
Eighth Circuit.

June 23, 1965.

DeWitte T. Lawson, Jr., of McDuffie, Cahill & Lawson, St. Louis, Mo., made argument for appellant and filed brief.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., and John A. Newton, Asst. U. S. Atty., St. Louis, Mo., submitted brief without oral argument for appellee.

Before BLACKMUN and RIDGE, Circuit Judges, and REGISTER, District Judge.

RIDGE, Circuit Judge.

After trial on a two-count indictment charging unlawful sales of narcotics, on two different days, in violation of 26 U.S.C.A. § 4705(a), appellant was found guilty by jury verdict and sentenced to concurrent terms of twenty years' imprisonment.

■ In the court below, appellant, standing on a motion for judgment of acquittal made at the close of the Government's case, offered no evidence in defense of the above charges. Nevertheless, we have reviewed the uncontradicted evidence adduced at appellant's trial in the light of Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed.2d 848 (1958), and are convinced that proof of facts as to defendant's guilt of the charges made against her was such as to warrant the submission of the issue of her guilt to the jury for determination.

The uncontradicted evidence adduced at appellant's trial established that two illegal sales of narcotics were made on the days specified in the indictment to two Government informers who were brothers, one of whom admittedly was a narcotics addict and had "done business" with appellant previously. Both such informers voluntarily agreed to take a Government narcotics agent to appellant's apartment to see if they could "make a buy." This came about as the result of a discussion between the agent and the informers concerning the narcotics trade in St. Louis, Missouri, generally, during which discussion appellant's name came up as one of the principal traders. Evidence was adduced at appellant's trial to the effect that she had a generally-known reputation as being an active dealer in narcotics. After the informers were searched they were provided with $30.00 in Government funds with which to purchase narcotics if their quest proved successful. At appellant's apartment an agent of the Government was introduced as a cousin of the informers. When she objected to his presence as a stranger and after assurances were given that he was all right, appellant, in the presence of the agent, agreed to sell two packets of heroin to one of the informers, but stated that they would have to go to her mother's house, as she did not keep narcotics in her own apartment. On arrival in the vicinity of her mother's house, the Government agent was told to wait in the car around the corner. The informer accompanied appellant to the house and stood on the porch while she went inside. Thereafter, as they walked back to the car, appellant handed that informer two small packets, which he later surrendered to the agent. The next day the same thing occurred * * * the two informers and the Government agent proceeded to appellant's apartment where they arranged to purchase two more packets of heroin. After paying $25.00 of Government funds to appellant they all proceeded to the same address as on the previous day at which time appellant delivered two packets to the informer in the presence of the Government agent. On both occasions the group was under continual surveillance by another agent who verified the general movements and actions of the group. The parties stipulated that the evidence of the Government chemist, if called, would be to the effect that the four packets purchased from appellant

and introduced in evidence contained heroin, a derivative of opium.

Appellant's sole assignment of error in this appeal is that an instruction, as given by her trial court, covering the defense of "entrapment," is erroneous. Entrapment was the only defense made to the charges for which appellant was prosecuted. Therefore, Instruction No. VII, as given by the trial court, is set out in its entirety in the margin.[1] Appellant's assertion of error in respect thereto is summarized in her brief as follows: "This instruction is erroneous because there is no such thing as a 'lawful entrapment.' Entrapment is ipso facto and ipso jure a defense to a criminal charge." From that premise appellant argues that because of the definition of "lawful" entrapment as made in Instruction No. VII, ante, error exists in the record of this case because of conflict thereof with Instruction No. XIV,[2] the verdict-directing instruction, which he concedes correctly stated and required a finding of the essential facts to warrant appellant's conviction of the charges made against her. In other words, appellant, in effect admits that a finding of the facts as stated in Instruction XIV, beyond a reasonable doubt, is sufficient to sustain her convictions, if the jury was properly charged as to "entrapment" as submitted by Instruction VII, ante.

At the outset of our consideration of this appeal we are met with the problem that the instructions complained of were only given to the jury by the court below after appellant's initial objection thereto was withdrawn, thus bringing into operation Rule 30, F.R.Cr. P., which provides, in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto * * * stating distinctly the matter to which he objects and the grounds of his objection." There is no question, however, that this rule does not preclude our consideration of plain error in the giving of instructions under Rule 52(b), F.R.Cr.P., in order to

[1.] "VII.

"The accused offers the defense of unlawful entrapment as to each crime charged in the indictment.

"The law recognizes two kinds of entrapment. Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, he is entitled to the defense of unlawful entrapment, because the law as a matter of policy forbids a conviction in such a case.

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is no defense, but is lawful entrapment.

"If the jury should find from the evidence that, before anything at all occurred respecting the alleged offenses involved in this case, the accused was ready and willing to commit crimes such as those charged in the indictment whenever opportunity was offered, and the Government merely offered the opportunity, the accused is not entitled to the defense of unlawful entrapment.

"If, on the other hand, the jury should find that the accused had no previous intent or purpose to commit any offense of the character here charged, and did so only because she was induced or persuaded by some agent of the Government, then the prosecution has seduced an innocent person, and the defense of unlawful entrapment is a good defense, and the jury should acquit the accused."

[2.] "XIV

"If you find and determine beyond a reasonable doubt from the evidence submitted to you in this case that Rebecca Cross knowingly sold a quantity of heroin to Don Knollhoff on October 10, 1963, for the sum of $30.00, and that the sale was not made pursuant to a written order form as required by the statute, then you may find the defendant guilty as charged in Count I of the indictment.

"You are further instructed that if you find and determine beyond a reasonable doubt that the defendant knowingly sold a quantity of heroin to Don Knollhoff on October 11, 1963, for the sum of $25.00, and that the sale was not made pursuant to a written order form as required by the statute, then you may find the defendant guilty as charged in Count II of the indictment.

"This is true as to both counts unless you find the defendant not guilty by reason of entrapment as explained in other instructions herein."

prevent a miscarriage of justice. Lash v. United States, 221 F.2d 237 (1 Cir., 1955); Herzog v. United States, 235 F. 2d 664 (9 Cir., 1956). If appellant is correct in her contention that an incorrect statement of her sole defense was given to the jury by the instructions *ante,* it is apparent that such would be plain error requiring a reversal in order to assure appellant a fair trial and chance to present her defense. Carson v. United States, 310 F.2d 558 (9 Cir., 1962). Thus we here consider the entrapment instruction appearing in the record of this appeal in light of controlling authority, notwithstanding appellant's failure to make objection thereto, in order to determine whether or not Instruction VII, *ante,* did in fact misstate the law applicable to appellant's only defense as made in this case.

■■ It is well-settled law that the defense of entrapment in a criminal prosecution is allowed as a matter of public policy, despite the recognized necessity of "artifice and stratagem" sometimes used by law enforcement authorities in unmasking crimes. Thus, in the law of entrapment a balancing of facts occurs between the legitimate aims of law enforcement and unlawful conduct of law enforcement officers which amounts to an unlawful seduction of the innocent to commit crimes. The dichotomy of entrapment is well stated in Sorrells v. United States, 287 U.S. 435, at pp. 441, 442, 53 S.Ct. 210, at pp. 212, 213, 77 L. Ed. 413 (1932), wherein the Court states:

> "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of (an) offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. (Citing cases.) The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, * * * or

other offenses, and thus to disclose the would-be violators of the law. A different question is presented when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." (Par. added.)

There, the Court firmly recognized that the defense of unlawful entrapment always defeats the prosecution in a criminal case. This position was reiterated by the Supreme Court in Sherman v. United States, *ante.* Basing its decision entirely on the principles enunciated in Sorrells, the Court in Sherman noted: "To determine whether entrapment has been established, a line must be drawn between the *trap* for the unwary innocent and the *trap* for the unwary criminal." 356 U.S. 369, 372, 78 S.Ct. 819, 821. (Emp. added.) In Sorrells, the Court referred to the decision of this Court in Butts v. United States, 273 F. 35, 18 A.L.R. 143 (8 Cir., 1921), as the leading case at that time on the question of entrapment, where Judge Walter H. Sanborn of this Court noted:

> " * * * in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys * * * to furnish opportunity for or to aid the accused in the commission of a crime * * * constitutes no defense to such a prosecution * * * (but on the other hand) when the accused has never * * * conceived any intention of committing the offense prosecuted * * * the fact that the officers of the government incited and by persuasion and representation lured him to commit the offense charged * * * is and ought to be fatal to the prosecution * * *." 273 F. 37, 38 (Par. added.)

Since promulgation of the above opinions, all courts which have considered the question of "entrapment" have been unanimous in holding that two possible factual

situations exist where law enforcement officers resort to artifice and use of decoys, in the apprehension of criminals, one of which constitutes a permissible type of "entrapment," while the other constitutes unlawful "entrapment" which defeats prosecution. The determinative question in every criminal action where the defense of entrapment is made, usually is one of fact, i. e. * * * did the criminal intent essential to proof of guilt of the charge made, originate with the officer or with the accused; that is, did the officer merely create an opportunity for the commission of a crime already born in a criminal mind, or did he implant the seeds of the crime where none such existed before? See, Whiting v. United States, 321 F.2d 72 (1 Cir., 1963); United States v. Masciale, 236 F.2d 601 (2 Cir., 1956), aff. 356 U.S. 386, 78 S. Ct. 827, 2 L.Ed.2d 859; United States v. Sawyer, 210 F.2d 169 (3 Cir., 1954); Newman v. United States, 299 F. 128 (4 Cir., 1924); Wall v. United States, 65 F.2d 993 (5 Cir. 1933); Reels v. United States, 239 F.2d 863 (6 Cir., 1956); United States v. Carr, 219 F.2d 876 (7 Cir., 1955); Roth v. United States, 270 F.2d 655 (8 Cir., 1959); Vinyard v. United States, 335 F.2d 176 (8 Cir., 1964); Peterson v. United States, 255 F. 433 (9 Cir., 1919); Yep v. United States, 83 F.2d 41 (10 Cir., 1936); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963). "The principles by which the courts are to make (such) determination (are) outlined in Sorrells." But where it is not necessary to choose "between conflicting witnesses, nor (judge) credibility" the existence of "entrapment" becomes a matter of law. Sherman v. United States, supra, l. c. 373, 78 S.Ct. l. c. 821.

Considering the instructions in the case at bar in the light of the foregoing cited authorities, it becomes apparent that appellant's argument here presents little more than a matter of semantics. Deleting for the moment the appellations "lawful" and "unlawful," as used in the instruction *ante*, it is indisputable that it clearly and concisely expresses the law * * * that a "trap" may be laid by law enforcement officers in the lawful enforcement of criminal law, but no such "trap" may be laid for those who have no criminal intent to violate the law, and such is the whole idea of "entrapment" as expressed and considered in the cases cited *ante*.

The use of the term "lawful entrapment" in the instruction here describes a situation where law enforcement officers lay a "trap," i. e. merely present an opportunity to an already criminally inclined person to commit an offense against the law. The term "unlawful entrapment" as used in the instruction *ante*, connotes and defines the antithesis of "lawful entrapment." Such terminology is somewhat novel in federal procedure and practice, (see 20 F.R.D. 278; 27 F.R.D. 84, and "Federal Jury Practice and Instructions," Mathes & Devitt, West, p. 135) but that is not to say that either such term is prejudicial or is a misstatement of the law as appellant's counsel here asserts. The phrase "lawful entrapment" can only be understood to describe the converse idea of a state of affairs frequently encountered and considered in the cases *ante*, where "entrapment" of the innocent is considered. In its narrowest sense and as a word of art, "entrapment" however used merely means, and is commonly understood as, the laying of a "trap". In its broad sense, where used to describe the actions of law enforcement officers in employing various devices to trip up the criminally inclined, that is, to catch them in a "trap", it may or may not be a defense, depending on whether the actions of the officers in setting the "trap" is legally permissible or not. Thus, it is apparent that the phrase "lawful entrapment" here complained of is accurate as stating the law of "entrapment" as considered in the cases, supra. Where an instruction correctly states the law to a jury, whose members are not expected to be conversant with legal cant, we are not prepared to hold that the use of a denominative

phrase in its common-sense meaning[3] is error so plain and prejudicial as to call for the invocation of Rule 52(b), F.R.Cr.P. in the face of the plain mandate of Rule 30, F.R.Cr.P.

As we hold that Instruction VII correctly states the law of entrapment, appellant's argument that it is inconsistent with Instruction XIV is without merit. The judgment below is

Affirmed.

---

3. In this connection, see Trice v. United States, 211 F.2d 513 (9 Cir., 1954). Therein, at p. 516, the Court states: "Here is entrapment in fact * * *. The question is: Is it illegal entrapment * * *?" Also see 27 F.R.D. 39, 84, the apparent source of the wording in the instant instruction. Obviously, the use of the phrases "lawful" and "unlawful" entrapment is not as unfamiliar as appellant would assert.