Paul Washington **KIBBY**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Charles R. **STEWART**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

Carl **McFADDEN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

**Nos. 18445–18447.**

United States Court of Appeals
Eighth Circuit.

Feb. 20, 1967.

Harry Roth, Clayton, Mo., for appellants.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee, with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Defendant-appellants Paul Washington Kibby, Charles R. Stewart and Carl McFadden, (hereafter referred to as defendants) were charged and convicted in the United States District Court for the Eastern District of Missouri, of illegal purchase [1] and sale of narcotics in violation of 26 U.S.C. §§ 4704(a) and 4705 (a).[2] They duly appealed.

Defendants pleaded not guilty to their indictments and were tried without a jury before the Honorable Roy W. Harper. Kibby and Stewart were tried together and McFadden separately. The cases were consolidated for purposes of appeal and the evidence presented against each of the three defendants is essentially the same. It indicated that Dudley G. Brown, a Government informer and long time friend of the three defendants, telephoned each of the defendants, asking to purchase narcotics from them. Brown testified that McFadden came to his home on November 15, 1965 and January 27, 1966, and there sold him heroin. He testified that defendant Kibby sold him heroin on September 28, 1965 and December 1, 1965, and that defendant Stewart sold him heroin on March 22, 1966. The transactions were observed by Federal Bureau of Narcotics agent Richard M. Patch, who verified Brown's testimony. Each of the defendants testified, admitted being at Brown's residence on most of the dates in question, but denied the sale of any narcotics. (Stewart didn't admit the March 22, 1966 date Tr. 124.)

Informer Brown had a record, was under a narcotics indictment in St. Louis, was a parolee from a theft conviction in California, and either was or had been a narcotics addict. The defense, of course, questioned his credibility. His credibility, however, was for the trier of fact, the Trial Judge, who accepted Brown's testimony with caution and apparently only gave credence to the testimony of Brown that was corroborated.[3]

1. The counts charging illegal purchases are derivative of, and inferred from, the fact of appellants' unexplained possession.

2. "§ 4704. Packages.
   (a) General requirement.—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."
   "4705. Order forms.
   (a) General requirement.—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

3. The Trial Judge remarked, in giving his decision:
   "There isn't any question but what either the defendants or Mr. Brown was lying, one or the other had to lie, because one of them says one thing and the other one says another. Now, if that was the only testimony that we had, from the type of people involved, the court would have a real hard problem, but that isn't the problem with which the court is confront-

In their final argument to the Court, defendants asserted their innocence. In addition they stated that they were legally entitled to rely on the defense of entrapment without admitting the substantive act of selling the narcotics, and contend the Government had entrapped them by using an informer to telephone and ask for narcotics. The United States Attorney suggested to the Trial Court that the defendants must first admit the substantive act of selling the heroin before they can contend that the Government entrapped them. Further, the Government argued that from the facts of this case no entrapment has been shown.

The Trial Court made no separate finding on the two arguments, (1) that defendants did not do it, and (2) that if they did they were entrapped, but merely found defendants guilty as charged on certain specified counts.[4] The Trial Court did not rule that the defense of entrapment was not available, nor did it refuse any testimony offered by the defendants attempting to show entrapment, as the defendants, all of whom testified, denied that they committed the offenses and testified that though they knew Brown, they were at his home for purposes other than the selling of narcotics. They argue entrapment, therefore, solely on the Government's evidence. We are unable to determine from this general finding whether the Trial Court ruled as a matter of law that the defendants were not entitled to raise the defense of entrapment, or, as a matter of fact, decided that there was no entrapment. In passing, we note that the defense of entrapment might not be applicable to the charges of possession of narcotics under § 4704(a), as this offense could have been committed prior to the contact being made by the Government Witness Brown.

In this appeal, defendants' sole argument is that they were legally entitled to rely upon the defense of entrapment without first admitting the substantive act charged. They have made a plausible argument and presented respectable authority for their position. Hansford v. United States, 112 U.S.App.D.C. 359, 303 F.2d 219, 221 (1962). "The defenses were alternative but not inconsistent." Smith v. United States, 118 U.S.App.D.C. 38, 331 F.2d 784 (1964); Henderson v. United States, 237 F.2d 169, 173, 61 A.L.R.2d 666 (5 Cir. 1956), "The two defenses (in this case) do not seem to us so repugnant that proof of the one necessarily disproves the other."; Sears v. United States, 343 F.2d 139, 143 (5 Cir. 1965), "We do not think that it is impermissibly inconsistent for a defendant to deny the acts charged, yet urge * * * that the government's own evidence establishes entrapment as a matter of law." However, we note that there is also considerable respectable authority which holds that such an inconsistent position may not be taken by a criminal defendant. Ortiz v. United States, 358 F.2d 107, 108 (9 Cir. 1966), "(W)here a defendant denies the commission of a crime, he is not entitled to the defense of entrapment * * *"; Ortega v. United States, 348 F.2d 874, 876 (9 Cir. 1965), "(T)o utilize the entrapment defense, an accused must admit he committed acts which constitute

ed here. We have the narcotic agent who witnessed the first three transactions, who furnished the money, who witnessed the transaction, saw it occur, * * * and, of course, under those circumstances we are not in the situation of having to rely entirely upon the testimony of Brown * * *" (Tr. 151–152).

4. Defendants Kibby and Stewart were also found not guilty on two counts charging additional illegal purchases and sales, because the District Attorney's office did not properly comply with the Court's order on a Bill of Particulars to furnish the place and the names of the parties involved in the possession and sale of the narcotics. The Court originally found Kibby and Stewart guilty on counts 7 and 8, which alleged possession and sale at Kibby's home on April 1, 1966. (Tr. 152.) But after the Assistant District Attorney said he did not tell counsel for Kibby and Stewart that the alleged offense occurred at Kibby's home but on the contrary had informed counsel that all sales occurred at Mr. Brown's house, the Court set aside the convictions and dismissed counts 7 and 8.

a crime * * * "; United States v. Georgiou, 333 F.2d 440, 441 (7 Cir. 1964), cert. denied 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176, "By invoking the defense of entrapment, defendant admits commission of the offense charged * * *." See, Ware v. United States, 259 F.2d 442, 445 (8 Cir. 1958).

While there might be some merit in the contention that the alternative defense of entrapment should be available to a defendant, without the defendant admitting his guilt, we do not intend at this time to make a full review of that issue. An extended review of the cases holding both ways on that issue could lead to the conclusion that entrapment should be available only when the acts constituting the commission of the crime charged are admitted. For different views or approaches to this problem, see Sylvia v. United States, 312 F.2d 145 (1 Cir. 1963) and Gorin v. United States, 313 F.2d 641 (1 Cir. 1963). Although alternative and inconsistent defenses are permitted in civil trials, there might be cogent reasons why defenses, inconsistent in fact, should not be allowed in criminal proceedings. We do not believe, however, that it is necessary for us to make a substantive holding on this divided issue, because we believe that as a matter of law the facts of this case cannot support defendants' contention that they were entrapped.

The earlier entrapment cases arose out of factual situations where the accused admitted the commission of the act but sought to excuse the commission because of the entrapment practices employed by the Government. Formerly, the Circuits were divided on whether entrapment actually constituted a defense. The Eighth Circuit, in Butts v. United States, 273 F. 35, 18 A.L.R. 143 (8 Cir. 1921) in an opinion by Judge Walter Sanborn, recognized the defense of entrapment, noting at page 38:

"The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to or create crime for the sole purpose of prosecuting and punishing it. * *

(I)t is unconscionable, contrary to public policy * * *."

The Supreme Court granted certiorari to resolve the conflict in the Circuits. Chief Justice Hughes, in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413 (1932), approved the *Butts* opinion, citing it as a leading case, recognized the defense of entrapment, held that it may be raised under a general plea of not guilty, based the defense on considerations of general public policy, and further held if evidence of entrapment was presented it was a factual issue to be decided by the jury, unless the evidence as a matter of law established entrapment. The strong concurring opinion of Mr. Justice Roberts, joined by Mr. Justice Brandeis and Mr. Justice Stone, viewed entrapment as a legal issue:

" * * * based on the inherent right of the court not to be made the instrument of wrong (and placed their doctrine) * * * on a fundamental rule of public policy. * * * The protection of its own functions and the preservation of the purity of its own temple belong only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law." Page 457 of 287 U.S., page 218 of 53 S.Ct.

The Supreme Court again, in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), in an opinion by Chief Justice Warren, reaffirmed the majority view in *Sorrells*, and held that entrapment, unless it can be decided as a matter of law, is a factual issue for the jury. A strong concurring opinion of Mr. Justice Frankfurter, joined by Justices Douglas, Harlan and Brennan, adopted Mr. Justice Roberts' views in *Sorrells*, that entrapment is a matter for the Court alone to decide, for the "preservation of the purity of its own temple." 385 of 356 U.S., 827 of 78 S.Ct. We are bound by the majority opinion in *Sorrells* and *Sherman*, and must view the issue as one of fact, unless, of course, as a matter of law no factual issue is presented.

■ Probably the Trial Judge was of the opinion that there was no entrapment, as no evidence was pointed out to him as constituting entrapment by defendants' counsel except the bare 'phone call by Brown asking to buy narcotics. This evidence is insufficient to warrant consideration of, or if tried by a jury, submission of, the issue of entrapment.

■ In order to effectively combat the market in contraband goods such as narcotics, untaxed liquor, certain game birds, etc., it is a common police practice for officers or undercover agents to pose as potential buyers of the illegal merchandise. When the Government agent or informer does nothing more than request that the merchandise be sold to him, the courts have repeatedly held that the defendant has not made a submissible case on the issue of entrapment.[5] In other words, as a matter of law, no entrapment takes place merely by a Government informer's asking to purchase contraband articles.[6] United States v. Ball, 344 F.2d 925 (6 Cir. 1965), cert. denied 382 U.S. 907, 86 S.Ct. 245, 15 L.Ed.2d 160; Brainin v. United States, 314 F.2d 460 (5 Cir. 1963); Hester v. United States, 303 F.2d 47 (10 Cir. 1962), cert. denied 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82; United States v. Lile, 290 F.2d 225 (6 Cir. 1961); United States v. Place, 263 F.2d 627 (2 Cir. 1959), cert. denied Canty v. United States, 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535; Rodriguez v. United States, 227 F.2d 912 (5 Cir. 1955); United States v. Markham, 191 F.2d 936 (7 Cir. 1951).

These cases clearly indicate that there was no issue of entrapment before the Trial Court. Defendants presented no evidence of entrapment and, in fact, testified that they neither purchased nor sold narcotics. The Government's evidence only shows that Government informer Brown telephoned the defendants, asking to buy narcotics. From the evidence, he did nothing more, for apparently defendants were willing sellers. In response to Brown's approach, each defendant came to Brown's residence and sold the requested narcotics. On facts very similar to these, the Supreme Court, in Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (December 12, 1966), commented, "Petitioner does not argue that he was entrapped, as he could not on the facts of this case."

In Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958), the Supreme Court stated:

"Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. * * * However, the fact that government agents 'merely afford opportunities and facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials."

■ As Government informer Brown did no more than inform the defendants that he was a willing buyer, in the words of the Supreme Court he was merely affording an opportunity and facility for the commission of the offense. The criminal conduct in this case was clearly the creative activity of the defendants and not of the law enforcement officers. Defendants were not lured by repeated and persistent solicitation, as in *Sorrells*, nor

---

5. Of course, if the informer does more, such as offer the defendant substantial financial reward, feigns severe illness or repeatedly cajoles or implores the defendant to violate the law, a factual issue of entrapment may then be presented. See, Carson v. United States, 310 F.2d 558 (9 Cir. 1962); Hamilton v. United States, 221 F.2d 611 (5 Cir. 1955); United States v. Sawyer, 210 F.2d 169 (3 Cir. 1954); State v. Taylor, 375 S.W. 2d 58 (Mo.1964).

6. However, in jury trials, as a matter of practice and "out of an abundance of caution" many trial courts prefer not to rule as a matter of law against a defendant on this issue, and even the faintest indication of entrapment will bring forth an instruction. See Rowell v. United States, 368 F.2d 957 (8 Cir.). A submission, therefore, does not necessarily mean that a submissible case has in fact, been made.

were they innocent parties, beguiled into committing crimes that they would otherwise not have considered, as in *Sherman*. The evidence strongly indicates that defendants were in the business of purveying narcotics, possessed narcotics and were ready to sell to anyone when they thought they could do so with impunity. The Government merely provided a stage upon which the offenders were free to act if they were so inclined. Once having performed, they are not to be heard to argue that they were entrapped. . . . .

It is, therefore, immaterial whether the Trial Judge viewed the defense of entrapment as not being available, or the evidence as not sustaining the defense of entrapment, because there is no evidence on the record to indicate or in any way support appellants' contentions that they were entrapped.

As there is more than sufficient evidence to support the convictions and no other errors are alleged or appear, the Trial Court's judgments of conviction are affirmed.