Robert **RIMERMAN**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18431.

United States Court of Appeals
Eighth Circuit.

March 14, 1967.

Certiorari Denied May 29, 1967.
See 87 S.Ct. 2053.

**252**

Gerald M. Smith, of Guilfoil, Caruthers, Symington, Montrey & Petzall, St. Louis, Mo., for appellant; Rexford H. Caruthers and Gerhard J. Petzall, of Guilfoil, Caruthers, Symington, Montrey & Petzall, St. Louis, Mo., on the brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., for appellee; Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Robert Rimerman, defendant-appellant, was tried to a jury and convicted on each of two counts in an indictment charging him in Count I with possessing and concealing counterfeit obligations of the United States in violation of 18 U.S.C.A. § 472, and in Count II with selling, transferring and delivering counterfeit obligations of the United States in violation of 18 U.S.C.A. § 473.[1] Defendant was sentenced to a term of thirty months on each count, the sentences to run concurrently. We affirm.

Defendant, a grocer, did business with the Jefferson Bank & Trust Company in St. Louis, Missouri, and was acquainted with Stephen E. Wood, one of the bank tellers. On October 18, 1965, defendant, while making his usual bank deposit, asked Wood to check the genuineness of a ten dollar bill. Wood noted the serial number and upon checking it against the bank's record of counterfeit bills found it authentic. Defendant then asked Wood if he would like to make $1,000 and Wood replied "who wouldn't?" Defendant then told Wood that if he would circulate $7,000 in counterfeit bills through the bank, he would pay him $1,000. Wood refused but defendant told him to think it over. After this conversation, Wood reported it to his superior,

---

1. 18 U.S.C.A. § 472:
"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

18 U.S.C.A. § 473:
"Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

the bank auditor, and report was also made to the United States Secret Service. Following this, Wood called defendant and advised that he had decided to accept the offer. Other conversations followed between defendant and Wood in which it appeared that the original scheme had gone awry, but defendant told Wood that he would bring him $300 in ten dollar counterfeit bills in exchange for six fifty dollar bills, agreeing that Wood should be paid $50.00 for making the exchange. This transaction was accordingly made and Wood delivered six fifty dollar bills, which had been marked by the Secret Service. Defendant gave Wood one of the fifty dollar bills. The serial number on some of the counterfeit bills was the same as that on the bill Wood previously checked as to authenticity. After this transaction, defendant left the bank and returned to his store. Later in the day he was arrested by the Secret Service while possessing the five marked fifty dollar bills.

It is not disputed that defendant possessed and transferred the counterfeit ten dollar bills and received in exchange the fifty dollar bills, one of which he returned to Wood. Defendant, however, denied knowing the ten dollar bills were counterfeit and testified he had received them from a salesman who owed him money. He explains his return of one of the fifty dollar bills to Wood as a loan. Thus, his sole defense to the charge was denial of knowledge that the bills were counterfeit or that he attempted to have Wood circulate them.

Defendant initially contends that the court erred in overruling his motions for judgment of acquittal at the close of the Government's case and at the conclusion of all the evidence. He asserts that a fatal variance exists in the indictment and proof, basing his argument on the Government's failure to prove "concealment" in the first count and "sale" in the second count of the indictment. The statutes denounce the crimes in the disjunctive whereas the indictment charges them in the conjunctive.[2]

In Count I, the indictment charges defendant with knowingly "possessing and concealing" counterfeit bills. The Government made no effort to prove "concealment," but it is undisputed that defendant "possessed" the counterfeit bills. Similarly, the argument is made that the Government did not prove a "sale" as charged in Count II, but here again there is no question but that defendant "transferred and delivered" the counterfeit bills to the bank teller. It was not incumbent upon the Government to prove either the "sale" or "concealment," as it has long been settled that

2. "That on or about the 21st day of October, 1965, in the Eastern Division of the Eastern District of Missouri
ROBERT RIMERMAN,
with intent to defraud, did keep in his possession and conceal certain falsely made, forged and counterfeited obligations of the United States, that is, 15 of what purported to be and were in the likeness and similitude of $10.00 denomination Federal Reserve Notes of the Federal Reserve Bank of Dallas, each bearing serial number KO3175187B, and 15 of what purported to be and were in the likeness and similitude of $10.00 denomination Federal Reserve Notes of the Federal Reserve Bank of Chicago, each bearing serial number G60249264G, he, the said defendant, then and there well knowing said notes were falsely made, forged and counterfeited.
"In violation of Section 472, Title 18, United States Code

"—SECOND COUNT—
"The Grand Jury further charges:
"That on or about the 21st day of October, 1965, in the Eastern Division of the Eastern District of Missouri, ROBERT RIMERMAN, did sell, transfer and deliver to Steven Woods, 30 falsely made, forged and counterfeited obligations of the United States, that is, 15 $10.00 denomination Federal Reserve Notes of the Federal Reserve Bank of Dallas, serial number KO3175187B, and 15 $10.00 denomination Federal Reserve notes of the Federal Reserve Bank of Chicago, serial number G60249264G, with intent that same be passed, published and used as true and genuine notes, he, the said defendant, then and there well knowing said notes were falsely made, forged and counterfeited.
"In violation of Section 473, Title 18, United States Code."

where a crime is denounced disjunctively in the statute but charged conjunctively in the indictment, proof of any one of the allegations will sustain a conviction. As stated in United States v. Conti, 361 F.2d 153, 158 (2nd Cir. 1966):

> "Charging alternative ways of violating a statute in the conjunctive is permissible, and a conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged. Smith v. United States, 234 F.2d 385 (5th Cir. 1956)."

Accord, Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1963); Arellanes v. United States, 302 F.2d 603, 609 (9th Cir. 1962), cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962).

■ Defendant next assigns as error the court's failure to instruct the jury as to the essential elements of the offenses charged. The crux of defendant's argument is that the court failed to define for the jury the operative words of the statutes and indictment—"possess," "conceal," "sell," "passing," and "publishing." It is argued that these words constitute essential elements of the offense and, therefore, must be defined. Defendant neither requested the trial court to make such definitions nor did he object to their omission from the charge. The court included in its charge the relevant parts of the statutes and also read to the jury from the indictment. It was entirely proper for the court to utilize the language of the statute in charging the jury. Speaking for this court in Williams v. United States, 328 F.2d 256, 262 (8th Cir. 1964), Chief Judge Johnsen stated:

> "A court may and generally should, where the law governing a case is expressed in a statute, employ the language of the statute in its instructions. (Citations omitted.) Except where the statute is complex or not expressed

in ordinary language—which is not the situation here—any amplification which a party may desire to have made must be the subject of a requested instruction by him."

To the same effect see Lumetta v. United States, 362 F.2d 644, 648 (8th Cir. 1966);[3] Caldwell v. United States, 338 F.2d 385, 391 (8th Cir. 1964).

■ It must be assumed that the jury had ordinary intelligence and comprehended the plain and simple language of the statutes. In fact, an attempt to explain such simple words as "possess," "conceal," "sell," "pass" and "publish" could well lead to confusion rather than clarification. The late Judge Sanborn, speaking for this court in Guon v. United States, 285 F.2d 140, 142 (8th Cir. 1960), stated:

> "Guon's criticism of the trial court's instructions is without merit. Stated briefly, the contention is that the trial court was required, regardless of any request, to define 'aiding and abetting' and to explain what is meant by the words 'directly or indirectly' as used in the charge. We cannot agree. 'Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion.' (Citation omitted.) Frequently, to attempt to explain understandable language is merely to confuse. If the instructions given cover the case and are correct, that is enough. (Citations omitted.)"

See also and compare United States v. Allegrucci, 299 F.2d 811, 814, 815 (3rd Cir. 1962); Popeko v. United States, 294 F.2d 168 (5th Cir. 1961); Bohn v. United States, 260 F.2d 773 (8th Cir. 1959), cert. denied, 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959); United States v. Malfi, 264 F.2d 147 (3rd Cir. 1959); Kahn v. United States, 251 F.2d 160, 162 (9th Cir. 1958); Ramsey v. United States, 245 F.2d 295, 296 (9th Cir. 1957);

---

3. In *Lumetta,* supra, this court said:
  "We know of no better way to instruct the jury than by the plain and simple language of the statute. It is proper

practice to employ the language of a statute in an instruction when the statute is composed of clear and simple language. (Citations omitted.)"

United States v. Jonikas, 197 F.2d 675 (7th Cir. 1952).

■■ By using language of the statutes, the trial court fully instructed the jury on the elements of the crime and certainly should not have undertaken to define simple words, particularly when no request was made for definitions or objection made to the language of the instructions. In any event, defendant is not entitled to a review because of his noncompliance with Fed.R.Crim.P. 30, 18 U.S.C.A., in failing to raise the question at trial and acquaint the trial court with the grounds for objection.

The court elaborately instructed the jury on the meaning of intent, knowingly, the presumption of innocence, the burden of proof and reasonable doubt, and completely protected all rights of defendant in its charge. Additionally, the court instructed on the Government's position as well as the defendant's.

Finally, defendant assigns as error the giving of the following instruction:

"When a defendant in a case of this kind takes the stand, which he has a perfect right to do, he is subjected to all the obligations of a witness, and his testimony is to be treated like the testimony of any other witness, that is to say, it will be for you to say, remembering the matter of his testimony and the manner in which he gave it, his cross-examination and everything else in the case, whether or not he told the truth. Then, again, it is for you to remember, you have a perfect right to do so and it is your duty to do so, the interest the defendant has in the outcome of this case."

Defendant candidly calls attention to our approval of similar instructions five times in the last five years in the cases of Caldwell v. United States, supra; Black v. United States, 309 F.2d 331 (8th Cir. 1962); Hance v. United States, 299 F.2d 389 (8th Cir. 1962); Rizzo v. United States, 295 F.2d 638 (8th Cir. 1961);

Foley v. United States, 290 F.2d 562 (8th Cir. 1961).[4]

We are urged to reconsider and depart from our prior decisions as it is asserted that the only evidence tending to prove any of the essential elements of the offenses is the testimony of Wood. Thus, defendant rationalizes that guilt or innocence depended solely on the jury's judgment of the credibility of defendant vis-a-vis Wood. But there is more to the Government's case than the bare testimony of Wood. It was the Secret Service Agents who marked the fifty dollar bills; who found them in defendant's possession at the time of his arrest; and who established the counterfeit nature of the ten dollar bills. Obviously, defendant's admissions, as party to the transaction but without knowledge the bills were counterfeit, coupled with testimony of the Secret Service Agents, sufficed to justify the jury's verdict, as the jury was bound to have found that defendant possessed and transferred counterfeit bills. Defendant's explanation as to lack of knowledge of the spuriousness of the bills; where and why he came into possession of them; and his purpose in segregating them from his other funds was questionable and completely devoid of corroboration in details easily corroborated if true, and entitled the jury to disbelieve him. When the testimony of Wood is considered in conjunction with that of the Secret Service Agents and defendant's admissions, it becomes clear that the Government made an extremely strong case for conviction.

Counsel for defendant vigorously and ably argued this issue both in brief and upon oral argument, and are to be commended for their industry and zeal in the representation of their client. We are directed to Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895), as establishing the rule which condones giving of such an instruction, and defendant points out that some of the state cases cited in *Reagan* have since

4. For earlier cases from this circuit, see Schaefer v. United States, 265 F.2d 750 (8th Cir. 1959), cert. denied, 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959); Shoulders v. United States, 218 F.2d 290 (8th Cir. 1955).

been overruled. But comparison of this instruction with the instructions in the older cases and even with *Reagan,* supra, indicates its innocuousness. For example, the instruction in *Reagan* was couched in the following language: [5]

"You should especially look to the interest which the respective witnesses have in the suit or in its result. *Where the witness has a direct personal interest in the result of the suit the temptation is strong to color, pervert, or withhold the facts.* The law permits the defendant, at his own request, to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you and you must determine how far it is credible. *The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit."* (Emphasis added.) 157 U.S. at 304, 15 S.Ct. at 611.

 We are well aware that, as defendant points out, the modern tendency is to afford a criminal defendant every conceivable safeguard, but it cannot be gainsaid that this instruction is not a proper declaration of the law as it only advises of the jury's duty to take into consideration the interest the defendant had in the outcome of this case, without any suggestion that defendant might be tempted to testify falsely. We repeat what we said in Caldwell v. United States, supra:

"There is no intimation or inference from the District Court's charge that the defendant here had been untruthful in his testimony. The trial judge properly admonished the jury that in testing defendant's credibility, they were obliged to consider his vital interest in the outcome of the trial." 338 F.2d at 392.

The judgment of conviction is affirmed.

5. The Supreme Court in *Reagan* ruled:

"In the same manner in behalf of the government, the court may charge the jury that the peculiar and deep interest which the defendant has in the result of the trial is a matter affecting his credibility, and to be carefully considered by them.

"Tested by these rules we see in the instruction objected to nothing of which complaint can reasonably be made. In the first part it lays down a general rule, applicable to all circumstances, and then in the latter part simply calls attention to the fact that the defendant has a deep personal interest in the result of the suit, and that that should be considered by the jury. There is no declaration nor intimation that the defendant has been untruthful in his testimony. There is only a reference to the jury of the matter of credibility coupled with the declaration that interest in the result is a circumstance to be weighed in its determination. This clearly is unobjectionable." 157 U.S. at 311, 15 S.Ct. at 613.