**Calvin J. TAYLOR, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 18872.

United States Court of Appeals Eighth Circuit.

March 4, 1968.

William P. Byrne, of Whalen, O'Connor & Byrne, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., St. Louis, Mo., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Calvin J. Taylor, a Negro and age 42, after a plea of not guilty, was convicted by a jury on all three counts of an indictment which charged him with unlawful sales of heroin on February 2 and 16, 1967, and with unlawful purchase or distribution of the drug on the former date, in violation of 26 U.S.C. §§ 4705(a) and 4704(a), respectively. Taylor twice before had been convicted on federal narcotics charges. Judge Meredith, pursuant to the provisions of 26 U.S.C. § 7237 (a) and (b), imposed a 20-year sentence on each count, the three sentences to run concurrently. Taylor appeals in forma pauperis.

Donald L. Grady and Earl Davis were also charged in other counts of the same indictment with violations of § 4704(a) on February 16 and 20, 1967, and of § 4705(a) on February 20. Taylor made a demand for a separate trial. This motion was granted. Later Grady and Davis each entered a plea of guilty on their § 4704(a) counts; when these pleas were accepted, their § 4705(a) count was dismissed. They received sentences of eight and five years, respectively.

The general fact situation is the usual one. There was a government agent, Carl L. Jackson. There was an informant, Anne Rogers. Jackson was a witness. Rogers was not. Taylor took the stand in his defense. It is conceded that the substances passed were heroin.

There is some conflict in the evidence. The government's case is to the following effect:

The February 2 incident. Jackson, accompanied by the woman informant, met Taylor at the rear of 1120 North Sarah Street in Saint Louis. The informant

introduced them. Jackson told Taylor he wanted to get ten capsules of heroin. Taylor replied that he had only nine and that they would cost $36. Jackson gave Taylor $40 in marked currency. Taylor handed Jackson nine capsules and four one dollar bills.

The February 16 incident. Taylor, at Jackson's request, came to him at the Carioca Lounge at 1112½ North Sarah Street. Jackson told Taylor he wanted more heroin. Taylor said he would have to go to a source. The two got into Jackson's automobile, drove to a pool hall where they waited about two hours, and then went on to a certain street corner. Taylor left the car. He came back and they returned to the pool hall. While they waited Jackson gave Taylor $40 in marked currency. They eventually left and drove to another corner. Taylor made a phone call. They went on to a new address. Taylor entered the premises. He came out and asked Jackson to go in with him. Inside they met Grady. Grady made some calls, went out, and a half hour later returned with several heroin capsules. Taylor gave Grady money and Grady handed Taylor some of the capsules. Taylor passed seven of these and four dollars to Jackson.

Taylor was the sole witness for the defense. He testified: He has been addicted to narcotics about twenty years. He had not known Jackson before February 2 but had known Anne Rogers. He had purchased narcotics from her in the past. On February 2 Rogers introduced Jackson to him as her new boy friend and told Taylor she wanted narcotics for Jackson. She gave him $40 and he got ten capsules of heroin for her. He never sold or distributed any to Jackson. It took about a minute for him to get the ten capsules. On February 16 he was told that someone wanted to see him at the Carioca. He went there and found Jackson who told him "he had it bad" and asked "could I get anything and I say I believe I could". They drove around Saint Louis. Jackson gave him forty dollars. They finally went to Grady's

house. Grady left the house and came back with nine capsules. Grady gave these to Jackson. Jackson kept five, and gave two to Taylor and two to Grady. They went to Grady's house because Grady himself is an addict. When they arrived there Taylor was beginning to be ill from narcotics. He would never have consented to this transaction if he did not need a fix himself.

The defense asserts error (1) in the prosecutor's opening statement; (2) in failing to direct an acquittal; (3) in failing to instruct on entrapment; and (4) in the inclusion in the instructions of a reference to the defendant's interest in the outcome of the case.

1. The opening statement.

The Assistant United States Attorney opened the trial with the statement:

"At this point in the proceedings it is my privilege to make an opening statement on behalf of the Government in which I will outline to you the evidence the Government will bring before you. After I have concluded by opening statement, it will be the privilege of defense counsel, Mr. Byrne, to give you the opening statement on behalf of the defendant."

The defense objected on the ground that "I have the right to reserve my opening statement until such time as I see fit. I do not have to immediately follow his". The court observed that this was correct.[1] The prosecution proceeded:

"Before I was interrupted I was going to explain that to you, that counsel for the defendant has the privilege, the prerogative, of waiting until the Government has concluded its case, then at that time give you the opening statement on behalf of defendant, in which he will outline the theory of the defense and the evidence that defense will bring before you."

The following was then interposed outside the hearing of the jury:

"I am objecting to the statement just made by Mr. Martin as to evidence I

---

1. The defense made a short statement when it opened its own case.

am going to present, for the reason it is highly prejudicial to my client. We are not required to present evidence and the United States Attorney is giving the impression we are required to present evidence. It is a comment on the failure of the accused to testify and I feel it is highly prejudicial and I am moving for a mistrial at this time."

This was overruled and the trial proceeded.

It is claimed that the court's action in overruling the objection and in denying the motion for a mistrial was grave error because the prosecutor's statement was "a comment on the accused's privilege against self-incrimination and leads the jury to believe that defendant must present evidence or take the stand". The Fifth Amendment and 18 U.S.C. § 3481 [2] are suggested, but the defense candidly acknowledges that it has found no authority on the point. It asserts that, by the comment, the defendant was forced to be a witness. On the other hand, at oral argument the defense acknowledged that Taylor would have taken the stand anyway.

The point strikes us as almost frivolous and as an attempt to balloon an innocent statement out of all proportion to its content and intent. Of course, comment about a defendant's failure to take the stand is not permissible in a federal trial. Stewart v. United States, 366 U.S. 1, 2, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893). There is and can be no argument as to this. The question here is as to what constitutes compulsory self-incrimination or as to what creates an adverse presumption violative of § 3481.

The Assistant United States Attorney's utterance, however, impresses us as no more than an innocuous, casual and polite opening remark made to get the trial under way and, perhaps, to place his own thoughts in order, and to give the jury general enlightment as to procedure. Perhaps it was more gracious than it was necessary. Perhaps it would have been better left unsaid. The remark, however, falls far short, in our view, of constitutional and statutory offensiveness. We perceive no prejudice. Certainly, if the remark could possibly be regarded as error, it was harmless and, under Criminal Rule 52(a), is to be disregarded. See Lake v. United States, 302 F.2d 452, 455 (8 Cir. 1962).

2 and 3. The failure to direct an acquittal and to instruct on entrapment. These points are interdependent and we consider them together.

The defense urges that the evidence clearly shows that any scheme to violate the law originated in the minds of Jackson and Rogers and not in Taylor's mind; that there was nothing to show that the government, before the meeting between Jackson, Taylor and Rogers on February 2, had reason to believe Taylor was violating or intending to violate the naroctics laws; that Jackson and Rogers approached Taylor; that he did not approach them; that they suggested the scheme; that what Jackson and Rogers did was lure an addict into a violation; that Taylor was given heroin by Jackson; and that all this constitutes entrapment and merits an acquittal as a matter of law. The argument, of course, seeks to bring the case down on the favorable side of the guidelines enunciated by Mr. Chief Justice Hughes in Sorrells v. United States, 287 U.S. 435, 441–442, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

It is further argued that error was committed when the court failed to charge the jury on entrapment. The defense acknowledges that it made no request for an entrapment instruction [3]

---

2. § 3481. Competency of accused
   In trial of all persons charged with the commission of offenses against the United States * * * the person charged shall, at his own request, be a competent witness. His failure to make such request

shall not create any presumption against him.

3. The court submitted its charge to counsel before it was given to the jury. The defense noted its objection to the refer-

but it asks that we invoke the plain error provision of Criminal Rule 52(b), and it urges that, in any event, the court should have given the instruction on its own motion.

This court on several occasions recently has discussed entrapment and its availability as a defense. Cross v. United States, 347 F.2d 327 (8 Cir. 1965); Rogers v. United States, 367 F.2d 998, 1001–1003 (8 Cir. 1966), cert. denied 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874; Rowell v. United States, 368 F.2d 957, 959–961 (8 Cir. 1966), cert. denied 386 U.S. 1009, 87 S.Ct. 1353, 18 L.Ed.2d 438; Rush v. United States, 370 F.2d 520, 522–523 (8 Cir. 1967), cert. denied 387 U.S. 943, 87 S.Ct. 2073, 18 L.Ed.2d 1328; Kibby v. United States, 372 F.2d 598 (8 Cir. 1967), cert. denied 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993; McDowell v. United States, 383 F.2d 599, 604 (8 Cir. 1967). In those cases in this list where the trial was to the jury the issue of entrapment was submitted. In *Rowell* the trial court made its submission reluctantly but "out of an abundance of caution" and we observed that "there was scant, if any, evidence to warrant submission of entrapment". Pp. 959 and 961 of 368 F.2d. And in *Kibby*, p. 602 of 372 F.2d, footnote 6, we noted that in jury cases, as a matter of practice, "many trial courts prefer not to rule as a matter of law against a defendant on this issue, and even the faintest indication of entrapment will bring forth an instruction". We observe again, as we did in *Kibby*, that "A submission, therefore, does not necessarily mean that a submissible case has in fact, been made".

■ We bear in mind that Taylor was convicted on all three counts of the indictment, that the sentences were the same and were concurrent, and that they were within the statutorily prescribed limit. This means that on these issues Taylor's appeal is unavailing if the sentence on any one count is validly imposed. Lawn v. United States, 355 U.S. 339, 359,

362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); White v. United States, 330 F.2d 811, 812 (8 Cir. 1964), cert. denied 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58.

■ We note initially that the second count of the indictment charged Taylor with a violation on February 2 of § 4704 (a). This statute relates to purchase and dispensation, as well as to sale, and specifies that "the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found". This court recently held that under this statute the government need go no further than prove possession of unstamped narcotics. This is because possession establishes prima facie evidence of the act proscribed by the statute. Jones v. United States, 377 F.2d 742, 745 (8 Cir. 1967), cert. denied 389 U.S. 885, 88 S.Ct. 157, 19 L.Ed.2d 183. The evidence here is undisputed, and in fact was admitted by Taylor on the stand, that he was in possession of unstamped heroin on February 2. We therefore repeat the observation made in *Kibby*, supra, p. 600 of 372 F.2d, that any defense of entrapment might not be applicable to the charge under § 4704(a), as this offense could have been committed prior to the contact made by Jackson and Rogers. This in itself might well be an end to Taylor's case. Nevertheless, we go on.

The February 2, situation, we feel, is completely controlled by Kibby v. United States, supra, 372 F.2d 598. There a government informer and longtime friend of the three defendants telephoned each of them and asked to purchase narcotics. Each acceded to this request. The case, tried to the court without a jury, resulted in convictions. On appeal this court held that as a matter of law the facts did not support the contention that the defendants were entrapped. We said, p. 602:

"When the Government agent or informer does nothing more than request

---

ence to the defendant's self-interest (the subject of the fourth point on appeal) and

then flatly said, "That is our only objection".

that the merchandise be sold to him, the courts have repeatedly held that the defendant has not made a submissible case on the issue of entrapment. In other words, as a matter of law, no entrapment takes place merely by a Government informer's asking to purchase contraband articles." [footnotes omitted]

We observed, by way of footnote, that if the informer does more as, for example, if he offers substantial financial reward or feigns severe illness, or repeatedly cajoles or implores the defendant to violate the law, a factual issue of entrapment may be presented. We cited Sorrells v. United States, supra, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Finally, we observed that the informer in *Kibby* did no more than tell the defendants he was a willing buyer; that he merely afforded an opportunity for the commission of the offense; that the criminal conduct was the creative activity of the defendants and not the officers; that the evidence strongly indicated the defendants were in the business and were ready to sell to anyone when they thought they could do so with impunity; that the government merely provided the stage; that, having performed, the defendants are not to be heard to argue they were entrapped; and that it was immaterial whether the trial court viewed the defense of entrapment as not available or the evidence as not sustaining it, because there was no evidence to indicate entrapment. See, also, Cross v. United States, supra, 347 F.2d 327.

■ The February 2 fact situation here is not pertinently distinguishable from *Kibby* and *Cross*. Jackson and Rogers did no more than ask to buy narcotics. Taylor was a willing seller. His testimonial dispute is only as to the identity of his vendee. It goes no fur-

ther. Jackson and Rogers merely afforded an opportunity for the commission of the offense. We are not persuaded by the defense suggestion that the offense originated in the Jackson-Rogers mind rather than in Taylor's, or by its stressing the fact that marked currency was used. The latter fact nearly always appears in these narcotics cases. Taylor was no innocent victim. His addiction is a misfortune but his own testimony shows that he was a purveyor of narcotics; that he possessed unstamped heroin on February 2; and that he was ready to sell or arrange for it when he could do so with impunity. This, to use the Supreme Court's words in Osborn v. United States, 385 U.S. 323, 332, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), "is a far cry from entrapment". On the February 2 count, as in *Kibby* and in *Cross*, the evidence is insufficient to warrant consideration of the issue of entrapment.

On the count having to do with the incident of February 16 the evidence as a whole is broader. The government's case again disclosed little more than a request for heroin made this time by Jackson alone and unaccompanied by Rogers. Taylor, however, when he took the stand, told his story of Jackson's stating he was in physical difficulty, of Grady's handing the heroin to Jackson and not to Taylor, of Taylor's own discomfort at the time, and of Jackson's passing out capsules in turn to both Taylor and to Grady. The defense further emphasizes that it was Jackson's automobile which was employed to make the journey in search of narcotics.

Thus, taking Taylor's testimony on its face, there was some conflict as to exactly what took place on February 16, and, in line with the observation in this court's footnote 5 in *Kibby*, p. 602 of 372 F.2d, a factual issue of entrapment might conceivably have been presented on the February 16 count.

The obvious answer to this, of course, is that, although entrapment was being considered by defense counsel during the

trial,[4] no instruction on entrapment was requested. The absence of any entrapment instruction was not mentioned even in the original post-conviction motion for a new trial. It made its appearance only by way of amendment to that motion. And even then the amendment asserts that the charge should have been given on the court's own motion because it "was clearly an issue in the case in the face of the testimony of Government witness Jackson". As we have pointed out, we see absolutely nothing in the testimony of Jackson which remotely supports entrapment.

■ Criminal Rule 30 is still a mandate for specific and appropriate requests. Even if the February 16 count stood alone, we would not be inclined, on this trial history, to conclude that the situation calls for action by us under the plain error concept of Criminal Rule 52(b). The February 16 count, however, does not stand alone. With the sentences concurrent and with the other counts valid, the plain error argument loses all meaning and significance.

4. The instruction as to self-interest.

The defense asserts error in the court's comment, in its instructions to the jury, that "It is for you to remember, you have a perfect right to do so, the very grave interest a defendant has in the case". We set forth in the footnote [5] the entire paragraph in which this comment appears.

■ The defense concedes that instructions of this kind have been upheld on appeal. It asserts, however, that the implication is that the defendant, when he took the stand, would commit perjury and that nothing curative of this was added by the court. It is said that this is violative of § 3481, providing that the defendant shall be a competent witness. It is argued that the jury well knows that the defendant has a grave interest in the case; that the comment was hostile and singled out the defendant's testimony; and that it resulted in defeating the purpose of his taking the stand in his own behalf. Hicks v. United States, 150 U.S. 442, 452, 14 S.Ct. 144, 37 L.Ed. 1137 (1893), is cited.

We are not persuaded that there is prejudice here. A reading of the entire paragraph convinces one, we feel, that the case was fairly presented to the jury. Of course, the trial court must protect the right a defendant has to take the stand and to keep the exercise of that right meaningful. And, of course, the protection afforded by § 3481 must not be denied by attrition or indirection. We are not to assume, however, that a jury is without intelligence, or that this jury in particular did not understand the import of the court's comments, or that its collective mind was thereby prejudiced against the defendant. The instructions held improper in the *Hicks* case, see pp. 450–452 of 150 U.S., 14 S.Ct. 144, are extreme and obviously offensive and are of a type different from the innocuous comment by the trial court here.

The instruction challenged in Reagan v. United States, 157 U.S. 301, 304, 15 S.Ct. 610, 611, 39 L.Ed. 709 (1895), was more specifically directed to the defendant than was the one employed in the present case. That instruction referred to a direct and

---

4. In his cross-examination of Jackson, defense counsel, in response to a government objection, said "Your Honor, this may have a bearing, I don't know at this point whether it does or not, but it may go to show a possible entrapment". At another point, after characterizing a narcotics agent's activity as "catching people", counsel asked, "In other words, it amounts to entrapment, does it not? To effectively enforce the narcotics laws?"

5. "When a defendant in a case of this kind takes the stand, which he has a perfect right to do, he is subjected to all the obligations of a witness, and his testimony is to be treated like the testimony of any other witness; that is to say, it will be for you to say, remembering the matter of his testimony, and the manner in which he gave it, his cross-examination, and everything else in the case, whether or not he told the truth. Then, again, it is for you to remember, you have a perfect right to do so, the very grave interest a defendant has in the case. As he places himself as a witness, he stands like any other witness."

a deep "personal interest", the strong temptation "to color, pervert, or withhold the facts", and the jury's duty to determine how far, if at all, the defendant's testimony is worthy of credit. Yet, pp. 305–311, 15 S.Ct. 610, a unanimous Court found no prejudicial fault. It described the instruction as one laying down a general rule and then calling attention to the fact of the defendant's deep personal interest. It said, "This clearly is unobjectionable".

Essentially the same instruction as was employed here has been repeatedly upheld by this court in the face of challenge. Rimerman v. United States, 374 F.2d 251, 255–256 (8 Cir. 1967), cert. denied 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992; Foley v. United States, 290 F.2d 562, 569 (8 Cir. 1961), cert. denied 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88; Black v. United States, 309 F.2d 331, 344–346 (8 Cir. 1962), cert. denied 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765; and Caldwell v. United States, 338 F.2d 385, 392 (8 Cir. 1964), cert. denied 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277. See, also, Shoulders v. United States, 218 F.2d 290, 292–293 (8 Cir. 1955); Schaefer v. United States, 265 F.2d 750, 754 (8 Cir. 1959), cert. denied 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82; Rizzo v. United States, 295 F.2d 638, 639 (8 Cir. 1961); Hance v. United States, 299 F.2d 389, 401 (8 Cir. 1962); Brown v. United States, 356 U.S. 148, 154–155, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). We adhere to these precedents.

We do not hesitate to observe, however, that the continuing and frequent attack on an instruction of this kind indicates that its use leaves defense counsel with a troubled mind. We suspect that this discomfort would be alleviated if the defendant were included by reference in the court's general instructions as to all witnesses. We would prefer that the defendant not be singled out. His interest is obvious to the jury. A general reference, such as "including the defendant", should suffice. Or the simple instruction proposed by Mathes & Devitt, Federal Jury Practice and Instructions, § 9.12 (1965), namely, "A defendant who wishes to testify, however, is a competent witness; and the defendant's testimony is to be judged in the same way as that of any other witness", might be considered for use and should withstand attack of the kind present here.

Affirmed.