UNITED STATES of America, Appellee,

v.

Charles R. STEWART, Appellant.

No. 20641.

United States Court of Appeals, Eighth Circuit.

Aug. 4, 1971.

Sam Raban, St. Louis, Mo., Harry Roth, Clayton, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before ALDRICH,* LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

We previously have affirmed the conviction of appellant, Charles R. Stewart, for violation of the narcotics laws in Kibby et al. v. United States, 372 F.2d 598 (8th Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993 (1967). Following our affirmance, Stewart made a timely motion on July 5, 1967, for a new trial on the ground of newly discovered evidence pursuant to Rule 33, Fed.R.Crim.P. The district court, which did not hear this motion until June 5, 1970, denied relief. United States v. Stewart, 314 F.Supp. 806 (E. D.Mo.1970). It attributed the delay in hearing the motion to frequent requests by Stewart's counsel for postponement of the hearing. Stewart appeals, contesting the trial court's determination on the merits and the fairness of the hearing. We remand this case with instructions.

To place this case in an appropriate frame of reference, we find it necessary to review briefly the crucial facts produced at Stewart's 1966 trial, as well as evidentiary materials submitted at the hearing on his motion for a new trial. Stewart's conviction rested upon testimony of informer Dudley G. Brown, a long-time friend of Stewart's, and corroboration of Brown's testimony by agent Richard N. Patch of the Federal Bureau of Narcotics. According to the testimony of these witnesses, Stewart sold heroin to Brown on March 22, 1966, at Brown's residence.

* Of the First Circuit, sitting by designation.

At the motion hearing, Stewart presented the trial court with two statements[1] made by Brown in 1967 in which Brown stated that he had committed perjury in his testimony against Stewart at the request of and in connivance with Federal Agent Patch. Brown further asserted that no sale of narcotics had occurred between Stewart and him on March 22, 1966.

Prior to the hearing, Stewart's counsel had applied for a writ of habeas corpus ad testificandum to produce Brown for testimony at the hearing. This request evoked a suggestion from the district judge that Stewart's counsel and the prosecutor attempt to "work something out." In response, the government dispatched two investigators to interview Brown. They obtained a detailed statement from Brown pertaining to his role as a witness for Patch in several criminal cases, including that of Stewart.[2]

In this statement, Brown affirmed his earlier recanting affidavit, which was attached to Stewart's motion, reiterating that no sale of narcotics had occurred between Stewart and him on March 22, 1966. He also expressed reluctance to testify about the contents of the statement.

In denying Stewart's motion, the trial court relied upon Brown's stated reluctance to testify, the opinion noting in part:

> Without going into the various inconsistencies in the statement, it is enough to be said that Brown stated, in part: "I will not take a lie detector test and I will not agree to be placed under oath before I sign this statement. I will not testify about the matter contained in this statement if I am brought back for a hearing or a trial."

In such a state of the record, the court is at loss to understand what newly discovered evidence has been found, particularly that of any consequence. Defendant's motion for a new trial is accordingly overruled in all particulars. [314 F.Supp. at 807]

In reviewing the trial court's action, we recognize that the granting or denial of a new trial rests upon factual and credibility determinations falling within the broad discretion of the trial judge. *E. g.,* United States v. Gebhart, 436 F.2d 1252 (8th Cir. 1971); Batsell v. United States, 403 F.2d 395, 403 (8th Cir. 1968), cert. denied, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785 (1969); *see* Dosek v. United States, 405 F.2d 405 (8th Cir. 1968), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969). We also recognize that a statement of recantation, such as made by informer Brown, should be viewed with a suspicious eye. Johnson v. United States, 291 F.2d 150 (8th Cir.), cert. denied, 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed. 2d 80 (1961). Experience has shown that persons in Brown's position are often prone to recant in an attempt to aid those they have helped to convict; perjury laws provide little deterrent to seasoned criminal litigants. See Newman v. United States, 238 F.2d 861, 862 (5th Cir. 1956).

But, notwithstanding the applicability of the foregoing principles, Stewart's motion deserves more than casual consideration since documents which he has filed with the district court now disclose that Agent Patch, whose testimony heavily influenced the trial judge's decision in Stewart's 1966 trial,[3] has suf-

---

1. One of Brown's two statements (both being similar in substance) carried a notary's signature and seal; the district court treated this statement as an affidavit.

2. Only portions of the text of this statement were disclosed to Stewart's counsel prior to and during the hearing. When Stewart's counsel consented to the filing of the statement, the court directed that the statement be filed, but sealed against inspection by all but the court.

3. In rendering his decision, the trial judge remarked:

> There isn't any question but what either the defendants or Mr. Brown was lying, one or the other had to lie, because one of them says one thing and

fered dismissal from government service under a cloud of suspicion.[4] Furthermore, we note with some dismay that Brown's service as an informer for the government began contemporaneously with a federal grand jury indictment for narcotics violations charged against him on September 15, 1965, which indictment was suppressed,[5] and was ultimately dismissed upon motion of the prosecutor on July 26, 1967.

It is the function of the trier of fact to consider these circumstances in evaluating the recanting statement made by Brown. But, in this case, because the trial court denied Stewart's motion on the ground that Brown would not testify if he were called, it did not find it necessary to evaluate Brown's testimony or to rule on the merits of the motion.

On the basis of the record presented here, we cannot accept the trial court's conclusion that Brown's stated reluctance to testify constituted a sufficient reason for denying the motion. We recognize that the fact of recantation by a witness is immaterial if the recanter refuses to testify, claiming his Fifth Amendment privilege against self-incrimination. United States v. Lawrenson, 315 F.2d 612 (4th Cir.), cert. denied, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693 (1963); *Newman, supra,* 238 F.2d 861. But, in this case, Brown voluntarily submitted an affidavit to Stewart's counsel. Moreover, Brown's complete statement to the government investigators suggests only his tentative reservation about testifying until given an opportunity to obtain the advice of counsel. Brown said:

> I will not take a lie detector test and I will not agree to be placed under oath before I sign this statement. I will not testify about the matters contained in the statement if I am brought back for a hearing or a trial. This is as far as I would like to go with this without the advice of counsel. I can't prove I am telling the truth. I've already told a lie under oath on the stand and this is perjury itself. I am not a lawyer and I don't know if coercion or intimidation would rule out perjury. I went on the stand to get my freedom, to get my case dropped.

Finally, if a witness does not qualify for Fifth Amendment protection because prosecution *is barred by the statute of limitations,* Brown v. Walker, 161 U.S. 591, 598, 16 S.Ct. 644, 40 L.Ed. 819 (1895), or does not claim that protection, *e. g.,* Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1942), his personal preference against

---

the other one says another. Now, if that was the only testimony that we had, from the type of people involved, the court would have a real hard problem, but that isn't the problem with which the court is confronted here. We have the narcotic agent [Patch] who witnessed the first three transactions, who furnished the money, who witnessed the transaction, saw it occur, * * * and, of course, under those circumstances we are not in the situation of having to rely entirely upon the testimony of Brown * * * [Tr. 151–52]

4. On May 23, 1969, Patch was discharged by the Bureau of Narcotics for "misconduct." On February 25, 1970, Patch was indicted by a federal grand jury on charges of soliciting and accepting a bribe in violation of 18 U.S.C. § 201(c) (2) and conspiring to solicit and accept a bribe in violation of 18 U.S.C. § 201 (c) (2).

5. At Stewart's trial, Judge Harper expressed his disapproval of the suppression of Brown's indictment most forcefully:

THE COURT: Do you mean to tell me that that indictment has been suppressed and he [Brown] is in this thing here and hasn't been arrested?

MR. MARTIN [Prosecutor]: Yes, your Honor.

THE COURT: Let me say this to you so there will be no misunderstanding: it's the last indictment that you're going to suppress in this court unless the situation changes * * * [Tr. 111–112]

testifying will not prevail against compulsory process.

■ In the light of all circumstances, we think that Brown's serious charge that a government agent framed Stewart warrants a remand for a specific finding as to whether or not Brown and Patch testified falsely at Stewart's trial. Accordingly, we remand this case to the district court to make an appropriate finding of fact upon the merits of the motion and to determine whether Stewart can present a case for a new trial under the rule that

(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal. [United States v. Pope, 415 F.2d 685, 691 (8th Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970).]

■ We add an observation concerning the state of the record. The full text of Brown's statement to the government investigators has not been disclosed to Stewart's counsel (see n. 2, *supra*). At the option of the prosecution, Stewart's counsel should be permitted to see those parts of the statement which are relevant to Stewart's motion in order to afford him the opportunity to stipulate with the prosecutor that Brown, if

called, would testify in accordance with his affidavit as supplemented by his statements to the government investigators. Alternatively, the court should issue a writ of habeas corpus ad testificandum compelling Brown to testify in court.[6]

---

6. Parenthetically, we note that Carl McFadden, whose similar narcotics conviction came before us on direct appeal with Stewart's appeal, Kibby et al. v. United States, 372 F.2d 598 (8th Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993 (1967), has also sought post-conviction relief on the ground that Brown perjured himself. The district court denied relief, McFadden v. United States, 317 F.Supp. 926 (E.D.Mo.1970), and we dismissed the appeal as legally frivolous. McFadden v. United States, 436 F.2d 1384 (1971).

In his motion for a new trial, McFadden made no reference to any recantation by Brown. McFadden merely alleged that Brown falsely testified in claiming not to be an addict. A review of the record revealed no false testimony by Brown in this regard. *McFadden, supra*, 317 F. Supp. at 927.