**1250**

**UNITED STATES of America,
Plaintiff,**

v.

**Charles R. STEWART, Defendant.**

**No. 66 Cr 58(A).**

United States District Court,
E. D. Missouri, E. D.

May 26, 1972.

Samuel Raban, St. Louis, Mo. and Harry Roth, Clayton, Mo., for plaintiff.

Daniel Bartlett, Jr., U. S. Atty., William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

HARPER, District Judge.

On April 13, 1966, Paul Washington Kibby and Charles R. Stewart were indicted (Case No. 66 Cr. 58 [1]). Both defendants were represented by Harry Roth. We are only concerned with Charles R. Stewart, who was indicted in Counts 5, 6, 7 and 8. After a plea of not guilty and the disposal of various motions, a jury was waived and the Court tried the case on May 23, 1966. Stewart was found guilty as charged in each of Counts 5 and 6.

On May 31, 1966, a motion was filed on Stewart's behalf for judgment of acquittal or in the alternative for a new trial, which motion was presented to the Court on June 3, 1966, overruled, and Stewart was sentenced under each of Counts 5 and 6 to twenty years, the term under each count to run concurrently with each other, Stewart having previously been guilty of violation of the drug laws.

The case was appealed and affirmed (Kibby v. United States, 372 F.2d 598, 8th Cir., cert. den'd 387 U.S. 931, 87 S. Ct. 2055, 18 L.Ed.2d 993). Thereafter, on July 5, 1967, a motion for new trial was filed by Charles R. Stewart on the grounds of newly discovered evidence. The pertinent part of the motion for new trial filed on July 5th is as follows:

"4. The evidence now available to the defendant was not available to him at the time of trial and has come into the possession of his attorney and of the defendant since the petition for certiorari was filed and rejected.

"5. During the trial it became important as to whether Agent Patch was in a position to see or could see, and did in fact see who, if anyone, came into the room or hallway of witness Brown's home on the 22nd of March, 1966, to deliver heroin and to receive a sum of money, namely $600.-00. The Court, during the trial and at the time of making his findings, made a point of the fact that he was relying on the testimony that the Agent, Mr. Patch, was able to and had seen who was in Brown's house that day.

"6. At the time of trial and not until very recently the defendant did not have any evidence that Mr. Patch could not have seen the person who delivered the heroin on March 22,

1966, in the home of Brown. He now has such evidence and desires to have the opportunity to bring it forward to prove his innocence.

"7. The defendant believes that it was known to the government agents, investigators and attorneys that Agent Patch was in no position to see who came into Brown's house on March 22, 1966, and that Mr. Brown would have and did testify to anything he was told to say at the time of the trial, because he was under fear of reprisal from the government agents if he failed to supply evidence against defendant Stewart and others.

"8. The defendant submits that through no fault of his own and not. due to his negligence nor the negligence of his trial counsel, but rather due to the conduct of the government agents, attorneys, and prosecution team, the defendant was unable to secure at the first trial, the evidence presently available to him. This new evidence is now available to him and to this court, as indicated by affidavit to be filed. The defendant further states that these facts came to his knowledge and possession recently and since the writ of certiorari was applied for and rejected by the Supreme Court of the United States.

"9. If all this evidence had been available to the defendant at the time of the first trial, any impartial judge or jury would have acquitted the defendant."

On June 5, 1970, the motion for new trial filed on July 5, 1967, was heard by the Court. The delay in hearing the motion was as a result of frequent requests by Stewart's counsel for postponement of the hearing for various reasons. The Court is frank to admit that it should have required an earlier hearing.

On July 9, 1970, the Court filed its memorandum opinion and order overruling the motion, from which an appeal was taken, and the Eighth Circuit Court of Appeals remanded the case to the District Court (445 F.2d 897). In the opinion, l. c. 901, the court said:

"In the light of all circumstances, we think that Brown's serious charge that a government agent framed Stewart warrants a remand for a specific finding as to whether or not Brown and Patch testified falsely at Stewart's trial. Accordingly, we remand this case to the district court to make an appropriate finding of fact upon the merits of the motion and to determine whether Stewart can present a case for a new trial under the rule that

"(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal. [United States v. Pope, 415 F.2d 685, 691 (8th Cir. 1969), cert. denied, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970).]

"We add an observation concerning the state of the record. The full text of Brown's statement to the government investigators has not been disclosed to Stewart's counsel (see n. 2, supra). At the option of the prosecution, Stewart's counsel should be permitted to see those parts of the statement which are relevant to Stewart's motion in order to afford him the opportunity to stipulate with the prosecutor that Brown, if called, would testify in accordance with his affidavit as supplemented by his statements to the government investigators. Alternatively, the court should issue a writ of habeas corpus and testificandum compelling Brown to testify in court."

Following the remanding of the case, the Court consulted with Stewart's at-

torneys, the full text of Brown's statement (Plaintiff's Exhibit 1) was made available to the attorneys, with the admonition that they should not disclose to anyone that part of it that pertained to persons other than Stewart, and it was requested that they advise the Court as to whether or not they would be agreeable to resubmitting the motion for new trial on the basis of the statement, or if they wanted Dudley Brown to be called as a witness at a hearing. The Court was thereafter advised that they would not agree to the use of the statement only, but insisted that Brown be brought before the Court to testify at a hearing.

After the Court of Appeals handed down the Stewart decision, they shortly thereafter handed down opinions in Paul W. Kibby (71-1074) and Carl McFadden (71-1397), respectively, indicating in the opinions that the post-conviction proceedings in those two cases and this case could be handled in one hearing.

After being advised by attorneys for Stewart that they wanted a hearing with Dudley Brown present, this Court issued a writ and had Charles R. Stewart, Paul W. Kibby and Carl McFadden returned to the court for a hearing. Charles R. Stewart was represented by Attorneys Harry Roth and Samuel Raban, but· it was ascertained that Kibby and McFadden had no attorney. In the original trial of each of these three petitioners they were represented by Harry Roth. Upon the return of these three, the Court appointed Harry Roth to represent Paul W. Kibby and Carl McFadden, since he had represented each of them at the trial. Before appointing Roth, the Court discussed with him the question of any possible conflicts, and Roth indicated to the Court that there were none and he would accept the appointment. The Court was informed by Roth that he would immediately get in touch with each of the petitioners Kibby and McFadden. Two days later he came to the Court and asked to be relieved because his client Stewart, upon whose behalf he was being paid a fee, insisted that he not represent Kibby and McFadden. The Court at that point relieved Roth of his appointment as attorney for Kibby and McFadden and appointed a separate attorney for each of them.

The three cases were set for hearing, and for the purpose of the hearing the Stewart, Kibby and McFadden cases were consolidated by agreement for hearing. The evidence presented was to some extent applicable to all three cases, though part of it only applied to each particular case. The witness, Dudley Brown, who was at the time of the hearing incarcerated in a State of Missouri penal institution, was returned by a court writ to testify at the hearing. An attorney was appointed for him to give him advice, and he did not testify until after he had consulted with his court-appointed attorney.

This Court will not in this memorandum attempt to cover the testimony offered at the hearing except as it pertains to Stewart, and will deal separately with the testimony as it pertains to each of Kibby and McFadden in the memorandum which will be filed in each of those cases [Kibby v. United States, D.C., 344 F.Supp. 1256; McFadden v. United States, D.C., 343 F.Supp. 402].

Insofar as Stewart is concerned, the testimony of Dudley Brown, the testimony of Narcotic Agent Fritz Engelking, the testimony of Narcotic Agent William Clark, Plaintiff's Exhibits 1 (copy of 1-A), 1-A and 5, Defendant's Exhibits A, B, C and D, the transcript of the original trial, and a stipulation with respect to Richard M. Patch, primarily pertain to Stewart's motion.

It was stipulated that Agent Patch was discharged from the service for misconduct on May 23, 1969, which was approximately three years after the trial. There has been some indication to the Court in the past that he had been convicted for a crime, but this was in error.

The testimony of Dudley Brown and the contents of Plaintiff's Exhibit 1-A (the statement of Dudley Brown given

to Narcotic Agent Clark and Inspector Walter Yates at the Missouri Training Center in Moberly, Missouri, on May 13, 1970) are about the same, both the testimony and the statement being very rambling, saying one thing at one time and later changing it.

On direct examination, Brown testified that on March 22, 1966, the date of the alleged Stewart sale, Patch came to his home and gave him $450.00; that Charles Stewart came to his home that day and was in his home, but that he gave Stewart no money; that he used the money Patch had given him to purchase narcotics from Maurice Jones; that Patch was in his back bedroom at the time that Stewart and Jones were in his home, but could not see what went on in the living room, where each of them were; that Defendant's Exhibits A, B and C are pictures of his home; that Stewart left his home about ten or fifteen minutes before Maurice Jones arrived; that he purchased narcotics from Jones and left the narcotics on the front table; that Patch came out of the back bedroom and got the narcotics; that he told Patch he got the narcotics from Jones, and that Patch said it looked like Stewart to him, not Jones; that he had worked with Patch, buying narcotics from various people; that Patch had previously caught him with narcotics at Gregory Taylor's and threatened to send him and his wife, who was with him, to the penitentiary unless they cooperated with him; that he agreed to cooperate by setting up certain buys; that Patch told him who he wanted to set up and Stewart was one of them; that at the time he testified at the trial he was on parole from California, and there were pending criminal charges for robbery in Missouri and a narcotic violation in the Federal Court.

On cross-examination, Brown stated that the statement given at Moberly (Exhibit 1) is not a correct copy of his statement. He admitted his signature on Exhibit 5, the statement made on April 22, 1966, with respect to the sale by Charles Stewart to Dudley Brown, that he read it before he testified at the Stewart trial, and that he was pretty sure that when he signed it, it was in blank; that he had been apprehensive about his own safety for five or six years; that someone had attempted to kill him twice, the first time in 1970, the second time five or six months before the hearing; and that the reason for the attempts, he felt, was because he had been a government witness, but that he couldn't prove it. He stated that at the time he was picked up for parole violation by the state authorities he was running and was dressed in women's clothes. He further stated that he told the narcotic agent when they interviewed him at Moberly (Exhibit 1–A) that he purchased heroin more than once from Kibby, McFadden and Stewart, but he did not remember the details of the purchases. He further testified that the Stewart sale was the only one that he put down where the sale was not made; that it is the only one that is false; and that the others are true to the best of his knowledge and belief.

As a result of his statement that Exhibit 1 had been altered the hearing was recessed until the following day so that the original of Exhibit 1 (Exhibit 1–A) could be obtained, and on the second day he was shown Exhibit 1–A, the original. He stated that it was not the document that he signed and that it was different in form. He did state that it was his signature on each page of Exhibit 1–A, but that what he signed was on long sheets of paper, twice as long as the sheets of Exhibit 1–A, and that the document had been clipped into four or five different pages. An examination of Exhibit 1–A discloses that it has not been cut.

He further testified that he was in court under a writ issued by the court; that he was sentenced to nine years for armed robbery in July of 1967 (the Federal narcotic charge was dismissed after he was sentenced by the state court); and that he was paroled in April of 1971 and returned to the institution for violation of his parole in August of 1971.

The Court asked Brown about a letter that he wrote to the Court prior to his being returned, and Brown testified that he wrote a letter to the Court requesting that he not be returned to testify; that he did not want to testify; and that when he was advised that he would be returned he requested that he not be placed in the City Jail. This wish was granted by the Court and the Court ordered the Marshal to place him in one of the outlying jails, which was done, and further ordered that no one be permitted to talk to him until he was brought to court, but he was permitted two visitors. On the day of the hearing, and before the hearing was commenced, he was made available to the attorneys for Stewart, Kibby and McFadden.

Narcotic Agent Fritz Engelking testified that he was acquainted with Dudley Brown and Patch; that he witnessed Dudley Brown's signature on Exhibit 5; that he was present when Brown signed it; and that the statement is in the same condition insofar as the typing is concerned as it was at the time he witnessed Brown's signature.

Narcotic Agent William Clark, one of the agents who interviewed Brown at the Missouri Training Center for Men at Moberly on May 13 and 14, 1970, testified that the report was accurate as to what Brown had told them; that he signed each paper; and that Exhibit 1–A was in the same condition now as when it was signed.

Brown's testimony with respect to various statements (Exhibits 4–A, 5–A, 6 and 7) he signed varies as to whether they were blank or filled out when signed and given to Patch, and there was no witness to his signature. Brown's signature on the statements are witnessed by narcotic agents who testified that they were filled out when they were signed. There are numerous inconsistencies in Brown's testimony with respect to what occurred at various times and with respect to what he was told by the government attorney Martin and by Agent Patch.

In his testimony at the hearing he does not really change his testimony given at the trial of Stewart, Kibby and McFadden, except as to the alleged Stewart sale of March 22, 1966, stating that what he said as to Stewart is the only false testimony that he gave, and that the other testimony is true to the best of his knowledge.

Brown was very nervous while testifying and appeared to be very, very scared. There were a number of spectators in the court room who appeared to be friends of Stewart, Kibby or McFadden. During the time that Brown was testifying he continually watched a limited number of these spectators.

With respect to Brown's testimony, the Court is faced with the problem of deciding whether or not he told the truth at the original trial, or at this hearing before the Court. After considering his demeanor on the stand, his testimony as to attempts on his life, his obvious appearance of being very scared, together with a number of inconsistencies in his testimony, his denial of witnesses to his signature on the statements, and the testimony of the narcotic agents who witnessed his signature, the Court is of the opinion that the testimony given by Brown at the original trial in this case was the truth, and that his testimony at the hearing with respect to the alleged Stewart sale of March 22, 1966, was not true.

The Court is not sure that it condemns the witness for so changing his testimony in view of the pressures placed on him as to Stewart and the constant strain on the witness over attempts to take his life. When the Court considers the witness' demeanor on the stand, together with the number of inconsistencies in his testimony, and in Exhibits 1–A and 5, the Court comes to the conclusion that his testimony at the hearing with respect to the sale to Stewart was false. Brown's testimony (Tr. 21) with respect to the location of Patch is not inconsistent with his testimony at the hearing.

Rule 33 of the Federal Rules of Criminal Procedure in part provides: "A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment."

The Court of Appeals in remanding this case (445 F.2d 897, 901), directed the court to make an appropriate finding of fact upon the merits of the motion to determine whether Stewart can present a case for a new trial under the rule set out, supra.

The testimony discloses that Brown's change of testimony with respect to what occurred on March 22, 1966, was obtained since the trial. It is questionable that Brown's testimony as to what occurred was brought to the court's attention within the two years required by Rule 33 FRCP. The motion for new trial with respect to newly discovered evidence filed on July 5, 1967, pertains to Agent Patch's ability to see what occurred on this occasion and to see who entered the house. The motion stated in part in paragraph 8: "This new evidence is now available to him and to this court as indicated by affidavit to be filed." No affidavit was timely filed with the court (June 5, 1970).

There is no dispute over the fact that Stewart was in the house on the day in question and at approximately the time in question. Stewart was aware that in these sales the house was normally under surveillance, and if Stewart's presence were disputed the agents conducting the surveillance would be available as witnesses for that purpose.

There is no material difference in the testimony of Patch's location in the house at the time of the alleged sale (Tr. pp. 21 & 77), namely, the back bedroom, and in the testimony at this hearing. Brown at the hearing, however, testified that Patch could not see the transaction, and Patch testified at the trial that he could see through the slightly open door in the bedroom and could see the table where the narcotics were placed, could see the persons there, and identified Stewart (Tr. p. 101).

The real difference in Brown's testimony at the hearing and at the trial is the fact that at the trial he testified he purchased the narcotics from Stewart, and at the hearing he testified he purchased them from Maurice Jones shortly after Stewart left, so if this testimony is proper under the motion for new trial filed on July 7, 1967, we are faced with the problem as to which of the testimony given by Brown, that at the trial or that at the hearing, was truthful. As stated above, while it is questionable that Brown's change of testimony is covered by the motion for new trial, yet treating it as being covered, the Court, as previously stated, believes Brown's testimony at the original trial was truthful and that his testimony at the hearing was false. While it is questionable that Brown's change of testimony as to the sale is covered by the motion for new trial, yet treating it as being covered, as previously stated, the Court holds that the testimony of Brown at the trial was the truth.

This memorandum is adopted by the Court as the findings of fact with respect to the motion for new trial, and the order of the Court previously entered on July 9, 1970, overruling the motion for new trial in all particulars, will remain as originally entered.