343 F.Supp. 402 (1972)
Carl McFADDEN, Petitioner,
v.
UNITED STATES of America, Respondent.
No. 71 C 346(A).
United States District Court, E. D. Missouri, E. D.
May 26, 1972.
Earl B. Wilburn, St. Louis, Mo., for petitioner.
*403 Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., William C. Martin, Asst. U. S. Atty., for respondent.

MEMORANDUM AND ORDER
HARPER, Senior District Judge.
On June 14, 1971, the Court filed a memorandum and order on petitioner's third motion under 28 U.S.C.A. § 2255 filed June 1, 1971, to vacate judgment and sentence imposed by this Court on June 3, 1966. In his motion the petitioner alleges as his basis for relief the perjury of the attorney for the government, suppression of evidence by the government's attorney, and perjury of two government witnesses, Dudley Brown and Richard Patch.
The allegations as to the witnesses Brown and Patch committing perjury were previously passed on by the Court in its ruling on its second 2255 motion filed on August 28, 1970, which was appealed to the Court of Appeals, and on March 8, 1971, the appeal was dismissed by the Court of Appeals as being legally frivolous.
After the filing of the memorandum and order by this Court on June 14, 1971, the petitioner on July 13, 1971, filed a notice of appeal and a motion for designation of the entire record and transcript, and on July 14, 1971, the clerk of the court prepared a certified copy of the clerk's docket entries, which were delivered to the Court of Appeals. On October 4, 1971, the Court of Appeals for the Eighth Circuit remanded said cause (71-1397) to this Court in view of the judgments previously entered in the cases of United States v. Stewart (445 F.2d 897) and Paul W. Kibby v. United States (71-1074, September 28, 1971). The Court of Appeals stated in part:
"On the Court's own motion, it is now here ordered that the cause be, and it is hereby remanded to the United States District Court for the Eastern District of Missouri in view of the judgments previously entered in the Stewart and Kibby cases.
"As is mentioned in the Court's opinion of September 29, 1971, in the Kibby case, the Court feels that this post-conviction proceeding can also be handled in the one hearing."
The pertinent part of the Kibby opinion is as follows:
"Because of the unsatisfactory situation arising as to both Patch and Brown, we remand the case for plenary hearing on the alleged use of perjured testimony of both Brown and Patch. The alleged perjury is not clearly shown by the record nor are we finding that the testimony was perjurous, but the facts now known to us call for an examination of the issue of the use of perjured testimony.
"Another panel of this court in United States v. Charles R. Stewart [445 F.2d 897], No. 20,641 8th Cir. August 4, 1971, has remanded the case of Charles R. Stewart who was convicted along with Kibby. It is felt that both of these post-conviction proceedings can be handled in one hearing as the same government witnesses are involved."
This Court issued a writ and had Charles R. Stewart, Paul W. Kibby and Carl McFadden returned to this Court for the hearing. Upon their return, it was ascertained that Charles R. Stewart was represented by Attorneys Harry Roth and Samuel Raban, but that Paul W. Kibby and Carl McFadden had no attorneys. In the original trial of each of these petitioners they were represented by Harry Roth. Upon the return of these three, the Court appointed Harry Roth to represent Paul W. Kibby and Carl McFadden, since he had represented each at the trial. Before appointing Attorney Roth, the Court discussed with him the question of any possible conflicts, and he indicated to the Court that there were none and he would accept the appointment. The Court was informed by Mr. Roth that he would immediately get in touch with each of these petitioners McFadden and Kibby.
*404 Two days later he came to the Court and asked to be relieved because his client, Stewart, on whose behalf he was being paid a fee, insisted that he not represent McFadden and Kibby. The Court at that point relieved Mr. Roth of his appointment as attorney for the petitioners Kibby and McFadden and appointed a separate attorney for each of them.
The three cases were set for hearing, and for the purpose of the hearing the Stewart, Kibby and McFadden cases were consolidated by agreement for hearing. The evidence presented was to some extent applicable to all three cases, though part of it only applied to each particular case. The witness, Dudley Brown, who was at the time of the hearing incarcerated in a State of Missouri penal institution, was returned by a court writ to testify at the hearing. An attorney was appointed for him to give him advice, and he did not testify until after he had consulted with his court-appointed attorney.
This Court will not in this memorandum attempt to cover the testimony offered at the hearing except as it pertains to this petitioner, and will deal separately with the testimony with respect to Kibby and Stewart in the memorandum which will be filed in each of those cases [Kibby v. United States, D.C., 344 F.Supp. 1256; United States v. Stewart, D.C., 344 F.Supp. 1250].
Insofar as the petitioner McFadden is concerned, the testimony of Dudley Brown, the testimony of narcotic agent Edwin L. Stamm, the testimony of narcotic agent William Clark, the testimony of narcotic agent Fritz Engelking, and Plaintiff's Exhibits 1 (copy of 1-A), 1-A, 6 and 7, primarily pertain to the petitioner's case. The testimony of Dudley Brown and Plaintiff's Exhibit 1-A (the statement of Dudley Brown given to narcotic agent Clark and inspector Walter Yates at the Missouri Training Center for Men in Moberly, Missouri, on May 13, 1970) are about the same, both the testimony and the statement being very rambling, saying one thing at one time and later changing it.
Brown testified at the hearing that he didn't tell the truth about McFadden at the trial; that at no time did he ever have a deal with McFadden; that he did purchase heroin from McFadden on more than one occasion; that Plaintiff's Exhibits 6 and 7, statements signed by him with respect to the two purchases from McFadden, were signed in blank; that there were a lot of details that he does not remember about the purchase of drugs that he made for former agent Patch, but that he has purchased drugs at one time or another from everyone mentioned in Plaintiff's Exhibit 1, that is, McFadden, Stewart and Kibby, and then he named a number of others; that he was not sure as to whether Patch was in his house or not at the time of the two alleged purchases from McFadden; that Patch didn't witness any of the sales as he couldn't see any of the transactions that took place in his house; that he did not recall a $150.00 purchase from McFadden, but he did recall one for $50.00, and Patch was not there, but then he said that Patch might have been in the house when he dealt with McFadden; and that if he (Patch) were in the house he was in the back bedroom and the sales were made in the living room, and Patch couldn't see them. He then stated the sales were on the second floor of the house, not on the first floor; that when he talked to the agents at Moberly he had no memory of the dates when the transactions occurred; that when the statements with respect to the two sales were signed the agents whose names are on the statements as witnesses were not present; and that he signed the statements in blank in his home, and they were filled out thereafter.
On cross-examination, Brown stated that something was left off the statement given in Moberly, and that it was not a correct copy. He admitted his signature on the various statements (Exhibits 1-A, 6 and 7), and that he told *405 the agents who interviewed him at Moberly that he purchased heroin from Stewart, Kibby and McFadden, but that he did not remember the details of the purchases. He further testified that the Stewart sale (March 22, 1966) was the only one that he put down where the sales were not made; that it is the only one that is false; that the others are true to the best of his knowledge and belief; that with respect to Exhibit 6 he stated it was his signature and that Edwin L. Stamm, who witnessed it, was probably present when he signed it; that he couldn't say it was in blank or not; and that with respect to Exhibit 7 he didn't think it was his signature, but it could be.
On redirect examination he testified that he reviewed Exhibits 6 and 7 before the trial and that he believed Patch said that would refresh his memory; that Patch didn't tell him anything about what he wanted him to testify as to McFadden; and that his testimony was from his memory; that he refreshed his memory by the use of the statements.
Brown denied that Plaintiff's Exhibit 1 was the statement that he signed. He claimed that the pages were shorter than those he had signed and that they had been cut off. As a result of this allegation, the hearing was recessed and the original statement was obtained and marked Plaintiff's Exhibit 1-A. Dudley Brown admitted that the signature at the bottom of each page of Exhibit 1-A was his. An examination of Exhibit 1-A discloses that the paper had not been cut.
Examining the contents of Exhibit 1-A (Brown's statement taken at Moberly) he in part said at page 2:
"I read the originals or copies of the above mentioned documents" (Exhibits 6 and 7) "just before I testified in McFadden's trial in May, 1966. I did not read these documents prior to signing them. As previously stated, when I purchased drugs for former Agent Patch I would sign a blank piece of paper with the understanding that Patch would fill in the details later. I assume that these two documents were two pieces of paper signed in blank by me. Other than Patch, there were never any witnesses to my signing these blank pieces of paper. The documents under discussion also contain the name of Edwin L. Stamm. To the best of my knowledge and belief Agent Stamm was not a witness when I signed the documents under discussion. I do not remember a lot of details regarding the purchases I made from McFadden."
He further said on page 3:
"I have purchased heroin from each of them, that is, McFadden, Stewart and Kibby, on one or more occasions, but not necessarily under the supervision of Agent Patch or any other agent. I do not remember the details of these purchases."
On page 5 he said:
"Most of the purchases I made for Patch were made in my home and Patch was usually hiding in my back bedroom."
And on page 6 he said:
"As previously noted in this statement there are a lot of details that I do not remember about the purchases of drugs that I made for former Agent Patch. However, I have purchased drugs at one time or another from everyone in this report, that is, McFadden, Stewart, Kibby. I have purchased drugs from Stewart on one or more occasions in the past, but I did not purchase drugs from Stewart on March 22, 1970. While I was working for Patch, Stewart was the only one that was put down as making a sale who really did not sell the drugs that I turned over to Patch. In other words, he is the only one in which the details of the sale are completely false. The others do have some basis of *406 truth, at least to the best of my knowledge and belief."
Edwin L. Stamm testified that he witnessed Dudley Brown's signature to Plaintiff's Exhibits 6 and 7, and that at the time they were signed in his presence by Dudley Brown they were fully typed out and in the same condition as they were when introduced before the court.
Narcotic Agent Fritz Engelking testified that he participated in the surveillance with respect to Carl McFadden on November 15, 1965 (Exhibit 6); and that he saw McFadden get out of a 1963 Buick and walk into 5730 Maple, where Brown lived, and then saw him later come out.
Narcotic Agent William Clark, one of those who took Plaintiff's Exhibit 1-A, testified that it had not been tampered with.
To summarize, in Brown's statement to the narcotic agents and his testimony at the hearing, Stewart is the only one he attempts to exculpate. His testimony is of no significance with respect to the allegations of perjury set out in the petition of McFadden.
It was stipulated that Agent Patch was discharged from the service for misconduct on May 23, 1969, which was approximately three years after the trial of the petitioner.
The Court will not go into details of some of the other aspects of Brown's testimony, which will be more fully developed in the Stewart and Kibby opinions. Brown's testimony does not refute his testimony given in the original trial with respect to this petitioner McFadden.
There being no merit to the petitioner's claim that he was convicted by perjured testimony, it is the Court's opinion that its original ruling that there is no merit to petitioner's motion is proper, and the order entered in this cause on June 14, 1971, will stand as entered.