**John McWILLIAMS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 72 C 631(2).**

United States District Court, E. D. Missouri, E. D.

June 15, 1973.

Sparrow & Sparrow, Kew Gardens, N. Y., and James A. Bell, St. Louis, Mo., for petitioner.

James E. Reeves, U. S. Atty., W. D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for respondent.

## MEMORANDUM AND ORDER

REGAN, District Judge.

Petitioner, presently serving an aggregate term of twenty years imprisonment following the affirmance of his 1967 four-count conviction of the unlawful purchase and sale of heroin, has moved under Section 2255, 28 U.S.C., to vacate the judgment of conviction. Previously he had sought unsuccessfully to obtain a new trial on the ground of newly discovered evidence. United States v. McWilliams, D.C.Mo., 297 F.Supp. 1161, affirmed 8 Cir., 421 F.2d 1083, cert. den. 397 U.S. 1070, 90 S.Ct. 1515, 25 L.Ed.2d 694.

As stated by the Court of Appeals (394 F.2d 41, 43), in its opinion ruling petitioner's direct appeal: "The course pursued by the government in constructing its case followed a pattern frequently found in narcotic cases. An informer, Miss Kimberly Robinson, in cooperation with narcotic agents Richard M. Patch and Dan C. Hoerner, entered into a narcotic purchase arrangement under their surveillance." Miss Robinson (who has also used the name of Marva Parks as well as many other names) was, as Judge Matthes characterized her, "(m)anifestly * * * not a paragon of virtue * * * but * * * (h)er testimony was corroborated in all essentials by agents Patch and Hoerner."

Petitioner's unsuccessful motion for a new trial was premised on the allegation that Miss Robinson had testified, contrary to the truth, that although she had used drugs she was not "addicted" to them. Petitioner's present motion is basically a second motion for a new trial in spite of the fact that petitioner avoids the use of the term "newly discovered" in relation to the evidence set forth in the motion. This clearly appears from petitioner's statement therein of "The Issue and Question Involved: Principal issue is whether the conviction of the petitioner is valid where a Government Agent named Patch testified against the petitioner in addition to the testimony of certain government witnesses, one of whom was a narcotic use (sic) and trafficker, and where subsequently the Government Agent was indicted for bribery by the United States Government."

Amplifying the foregoing statement, petitioner urges that Patch's testimony was "crucial" and if "re-appraised in light of certain facts later occurring, the petitioner's innocence would be vindicated. * * * The later facts occurring were that Patch was indicted for bribery," citing as authority for this statement United States v. Stewart, 8 Cir., 445 F.2d 897.[1] All that *Stewart* decided was simply that an evidentiary hearing should be held on a timely motion for a new trial based on an affidavit by the *informant* that he had committed perjury in testifying against Stewart at request of and in connivance with Federal Agent Patch. It appears that Stewart and his co-defendants had waived a jury and were tried by Judge Harper. The defendants took the stand at their trial and specifically denied making the alleged sales. In rendering his decision, Judge Harper stated that either the defendants or the informer had lied, because of the direct conflict in their testimony, and that in this situation he chose to believe the informer in light of the fact that he was corroborated by Agent Patch. In the present case, the "informer" (Miss Robinson) had *not* recanted her testimony or otherwise receded therefrom. In addition, petitioner did not testify in his own defense. Hence, the present situation is wholly unlike

---

1. In a footnote in *Stewart*, the court states that Patch was indicted on bribery charges on February 25, 1970, and had theretofore, on May 23, 1969, been discharged for misconduct. Petitioner's trial was in June, 1967, almost two years before Patch's discharge on unrelated matters. And, of course, he was indicted well over two and a half years after the trial.

that which pertained in *Stewart*. It is also of interest that on remand in *Stewart*, Judge Harper found that the informer's testimony at the original trial was the truth and so denied relief to Stewart.

■ Assuming that Patch was *indicted* in February, 1970, on an unrelated bribery charge, that fact could not be used to discredit his testimony given in June, 1967, nor for that matter would the fact an indictment had been returned been admissible even had petitioner's trial been held after the return of the indictment. Surely, Patch is entitled to the same presumption of innocence as any other person against whom an indictment is returned, and there is no contention that Patch was ever *convicted*. See Judge Harper's statement in D.C.Mo., 344 F.Supp. 1250, l. c. 1252.

In further support of his motion, petitioner refers to two affidavits allegedly "annexed" to his motion. No affidavits are in fact annexed to the motion on file nor have they otherwise been filed in this case. The motion does, however, contain what purports to be a summary of the content of these "affidavits," one allegedly made by Marion Grey (apparently the Marian Gray who was referred to in the testimony at petitioner's trial),[2] and the other by an Andrew Lee Lyles (referred to in the trial as Miss Robinson's common-law husband). Both "affiants" are presently incarcerated in federal penal institutions, each of them having been convicted on unrelated narcotics charges in this Court (but not before this judge).

Miss Gray was found guilty by Judge Meredith of purchasing and selling heroin on two occasions, United States v. Gray, D.C.Mo., 271 F.Supp. 649, affirmed in Gray v. United States, 8 Cir.,

391 F.2d 605. That conviction was on June 15, 1967, just 11 days before petitioner was tried and convicted. As summarized in petitioner's motion, her "affidavit" contains a denial by her that she had any dealings with petitioner, together with a statement that the narcotics she delivered to Miss Robinson were not received from petitioner or delivered to her pursuant to a telephone direction from petitioner. It is to be noted, as Judge Matthes stated in petitioner's direct appeal, that the prosecution testimony was not that petitioner telephoned Miss Gray but that he telephoned another person to send Miss Gray over with the "stuff," and that it was after this call that Miss Gray came to Miss Robinson's motel room and delivered the heroin capsules to petitioner in the room, and that petitioner then placed the capsules on the table following which he took $35 of the sum of $50 which Patch had earlier placed on that table. At best, any testimony by Miss Gray could have served only to dispute, in part, the testimony of the three principal government witnesses. That she was not used as a witness is understandable in view of her then recent conviction together with the fact that any testimony she might have given in conformity with the affidavit would have incriminated her in still another narcotics offense.

As for Lyles, he was convicted in June, 1968, on his plea of guilty. We judicially knew that shortly before petitioner's trial Lyles was shot in connection with an alleged attempt on Miss Robinson's life, apparently to prevent her from testifying at petitioner's trial. There is little more in the summary of his "affidavit" than Lyles' conclusion that "the whole thing concerning Mc-WILLIAMS was spearheaded by Agent Patch. Patch set it up and told Kim

---

2. We judicially know that on April 8, 1970, Judge Meredith denied a Section 2255 motion filed on behalf of Miss Gray which was based in part on the fact that Patch, one of the agents who testified in his case, had been indicted and dismissed. Judge Meredith there held that such fact "has no bearing on his credibility in a case tried two years earlier."

what to testify to. Patch went to the Circuit Attorney's Office on several occasions to get cases dropped for me in exchange for my cooperation with him and for allowing Kim to cooperate with him." We find nothing in this "affidavit," assuming its existence, which would suffice for Section 2255 relief on the theory that Patch (and Hoerner for that matter) committed perjury in testifying against petitioner. It is apparent that Lyles has no personal knowledge as to whether Miss Robinson in fact made the arrangements with petitioner concerning which she testified or as to whether petitioner was personally present and consummated the transactions to which Patch, Hoerner and Miss Robinson testified. At most, his testimony could amount only to evidence of an alleged admission against interest by Miss Robinson.[3]

Rule 33 of the Federal Rules of Criminal Procedure provides that a motion for a new trial on the basis of newly discovered evidence must be made within two years. The mandate of the Court of Appeals affirming petitioner's conviction was ultimately filed in this Court on January 30, 1969. Petitioner's present motion was filed October 12, 1972, so that we have no jurisdiction to consider the motion as one for a new trial under Rule 33, even if the evidence met the required standards as "newly discovered."

No doubt because of its untimeliness, petitioner has designated his motion as one filed under Section 2255, but such does not change its inherent character. What petitioner really desires is a new trial at which he hopes Agent Patch will not testify. However, we find no basis in the allegations of the motion which would justify our setting aside and vacating the conviction. No hearing is required. The motion and the files and records of the case conclusively show that petitioner is not entitled to relief.

3. We judicially know that the defense counsel for both Miss Gray and Mr. Lyles is one of the attorneys now representing petitioner.