**Carl McFADDEN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 73 C 350(A).**

United States District Court, E. D. Missouri, E. D.

Aug. 7, 1973.

Carl McFadden, pro se.

James E. Reeves, U. S. Atty., and J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for respondent.

## MEMORANDUM AND ORDER

HARPER, District Judge.

Petitioner has filed a motion under 28 U.S.C.A. § 2255 asking the court to set aside and vacate his conviction and order a new trial. After the filing of the original petition the petitioner filed an amended petition setting up additional allegations.

This is the fourth 2255 motion filed by this petitioner. He was originally charged in four counts for violation of the Federal narcotic laws, was tried to the court and found guilty, was sentenced to ten years on each of four counts, Counts 1 and 2 to run concurrent, Counts 3 and 4 to run concurrent, Count 3 to run consecutively with Count 1, or a total of 20 years. He was represented by hired counsel, appealed, and his conviction was affirmed on appeal (372 F.2d 598, 8 Cir., cert. denied 387 U.S. 931, 87 S.Ct. 2055, 18 L.Ed.2d 993).

In this motion petitioner seeks to attack his conviction on the basis of alleged suppression by the government of information concerning the interest of a government witness in testifying against petitioner. Petitioner alleges evidence was withheld with respect to a deal that the government made with the witness, Dudley Brown, and further alleges the witness, Richard Patch, Special Agent (Narcotics) was under investiga-

tion at the time and this information was withheld. While petitioner's allegation with respect to the witness, Dudley Brown's alleged "plea-bargaining" offers a slight variation from the claims which he previously raised in one of his more recent 2255 motions, the thrust of his contention is essentially the same.

The petitioner in his third petition (71C 346 [A]) alleged that he was convicted through the perjured testimony of witnesses, Dudley Brown and Richard Patch, and in addition, that the "Petition is based on perjury by the attorney for the government and suppression of evidence by the government's attorney, Mr. William G. Martin. * * * Mr. Martin suppressed evidence that would have been useful to the petitioner at his trial."

The second 2255 motion filed by the plaintiff (72C 437 [A]) alleged perjury of the two government witnesses, Dudley Brown and Richard A. Patch. The motion was denied, it was appealed, and the Court of Appeals (436 F.2d 1384) dismissed the case as frivolous.

In the third motion referred to above (71C 346 [A]), the motion was denied, it was appealed and the Court of Appeals remanded said case (71–1397) to the district court in view of the judgments entered in the case of United States v. Stewart, 8 Cir., 445 F.2d 897, and Kibby v. United States, 71–1074, the three cases being remanded for a plenary hearing. The hearing was held November 22 and 23, 1972, which plenary hearing was with respect to the petitioner's allegation that he was convicted through the perjured testimony of witnesses Brown and Patch and the suppression of evidence by the government attorney, evidence that would have been useful to the petitioner at his trial. He was represented by a court-appointed attorney at this hearing, which was held in conjunction with the Stewart and Kibby cases. The court denied his motion, he appealed, and the appeal was dismissed as legally frivolous (463 F.2d 730).

The Eighth Circuit Court of Appeals in Patrick v. United States, 466 F.2d 502, in dealing with an appeal from a 2255 motion, at page 503, said: "The district court is not required to entertain successive motions for similar relief on behalf of the same person. Citing cases."

The Court believes it fair to say that the points raised in this case are essentially the same as those raised and decided by the Court in the petitioner's third 2255 motion, in that the allegation with respect to the plea-bargaining is covered by the petitioner's allegations with respect to the suppression of evidence by the government's attorney. The Court, however, will discuss the petitioner's allegations in this motion.

■■ The petitioner in the motion before the Court is relying upon evidence produced at the plenary hearing held with respect to the third motion which was considered by the Court in its ruling.

On page 3 of his original petition in this case reference is made to cross-examination by his attorney of the witness Brown at page 18 of the transcript in his trial (66Cr 61), in which the witness Brown states that it was not his belief that because he was assisting the narcotic agents he would be free from the pending indictment against him. The petitioner's petition further leaves the impression that the witness testified that there was no case pending against him, yet on page 13 of the trial transcript in reply to cross-examination by petitioner's attorney, the witness testified that there was a Federal narcotics case pending against him which had been pending since the prior September. At the bottom of page 3 of petitioner's motion he quotes from page 11 of the trial transcript and ends the quotation with the court's ruling requiring his attorney to make the record. Immediately following the ruling, the trial transcript discloses that the petitioner's attorney asked the witness Brown about his prior criminal record. Brown testified to such, which was substantial, and testi-

**1108**

fied to his narcotic addiction in the past, and with respect to a pending narcotics case against him. The Court of Appeals opinion (supra); 372 F.2d at page 599, refers to such testimony.

When we examine the transcript of the testimony in the plenary hearing we find that the court heard the testimony with respect to the three petitioners, Stewart, McFadden and Kibby, together. The cases were not consolidated, but since the same witnesses were involved the hearing was held as one, though the opinions deal with each of the three petitioners separately. At the hearing it was agreed the attorney for each defendant would question each witness but only as to matters that pertained to his client, and the Court in deciding each case would deal only with testimony with respect to each petitioner.

In the testimony with respect to the petitioner Stewart (pages 18 and 19 of the transcript), the witness Brown testified that when at Mr. Taylor's house a package was handed to Brown's wife, that Patch came out, took the package from his wife's bra and threatened to send Brown and his wife to the "pen" unless he cooperated, and that he did cooperate, but the facts show that he was later indicted for a narcotic violation in five counts.

During the hearing the witness Brown was cross-examined by Mr. Wilburn, the attorney for petitioner McFadden, and at page 30 he asked these questions referring to the McFadden trial:

"Q  Were you ever told prior to that trial that your indictment would get dismissed if you cooperated?

"A  Well, maybe not exactly but it was hinted that it would be dismissed.

"Q  Was that your belief and understanding when you did testify in the trial of the three men on that date?

"A  Mr. Martin told me something to that effect.

"Q  That was your belief and understanding in your own mind before you testified?

"A  Yes, it was."

On cross-examination at pages 101, 102 and 103, Mr. Martin, the assistant district attorney, questioning (part of this is set out on pages 6 and 7 of petitioner's original petition), asked Mr. Brown:

"Q  Mr. Brown, did I ever tell you what to testify in court?

"A  Only thing I recall you telling me is to kick my drug addiction before coming to court. You did tell me that.

"Q  Did I tell you what to say in any of those cases that I tried, particularly Kibby, Stewart and McFadden?

"A  No, but you indicated that my indictment would more than likely be dropped if you could convict them gentlemen sitting there.

"Q  Just what did I say?

"A  Well, I don't know, you and Mr. Patch was talking, I can't remember word for word, but this is what you said in so many words, indicated to me and told me to be sure and get rid of that drug addiction.

"Q  Now, referring to the testimony did I ever tell you anything to change in that testimony or anything to say?

"A  Well, I think you did, Mr. Martin. I think you—I don't know exactly what I said, I've forgotten, but you did tell me what to say in regard to my own case pending, and you told me to say something in regard to that, that I would either be recommended for consideration or something to that effect in my case, and something to that effect.

"Q  Well, I'm not clear as to your answer, Mr. Brown. I'd like for you to clarify that answer a little bit, Mr. Brown. I'm not clear as to what you're saying.

"A  You more or less spoke in innuendo, ambiguous type remarks. You wasn't specific. You could only get this impression from what you said."

It is further interesting to note that at pages 86–87, the witness Brown further testified:

"Q  Now, sir, you mentioned that Mr. Patch gave you a gun?

"A  Yes.

"Q  Tell us why did he give you a gun?

"A  Well, it was supposed to have been for my protection.

"Q  From whom?

"A  From the cases I was supposed to have made for him.

"Q  And that was including this case versus Mr. Stewart, Mr. McFadden and Mr. Kibby, right?

"A  All the so-called cases that I made.

"Q  In other words, you were afraid for your own safety and Mr. Patch gave you a gun for your own protection, is that right?

"A  Well, I can explain that.  Mr. Patch tried to get me in Lexington, Kentucky, and at the time my state parole officer wouldn't let him send me to Lexington, Kentucky, so it was Mr. Patch's idea to give me the gun and told me to stay at home."

This testimony indicates that Patch was trying to help the witness, who was an addict, to get treatment.

The Court has examined the transcript in the petitioner's original trial and the transcript in the plenary hearing, and what has previously been referred to is the only testimony the Court found that pertains to alleged promises. In the Court's opinion this testimony in no way reflects plea-bargaining nor any promise.  No one is quoted to that effect.  The witness Brown at the plenary hearing based the promise not on a statement to that effect but on his impression.  The Court will later on reply to Brown's testimony at the plenary hearing.

The petitioner makes much of the fact that the case against Brown was dismissed, but the transcript at page 137 shows that at the time of the plenary hearing the witness Brown was in the Missouri Penal Institution serving a sentence of nine years for armed robbery; and that the narcotic indictment pending against Brown was dismissed after he was sentenced to the Missouri Penitentiary for the nine years.

The petitioner alleges the Court was not familiar with the fact that when his case was tried the witness Brown was under two Federal indictments, one for the sale and one for the possession of narcotics, and refers to Exhibit B which he filed with his petition to support such statement.  Exhibit B is one indictment in five counts and not two Federal indictments.

The petitioner further alleges in his amended petition that at the time of the trial Richard Patch, a special narcotics agent, was under investigation himself.  At the plenary hearing (pages 147-48) it was stipulated that Patch was discharged from the Narcotics Bureau on May 23, 1969, for misconduct.  This was some three years after the trial of the petitioner, and there is no evidence to support the allegation that at the time of the trial Patch was under investigation.  It should further be noted with respect to witness Brown at the plenary hearing there was some discrepancy between his trial testimony and the testimony given at the plenary hearing.  As set out by this Court in the opinion filed in the Stewart case (a copy of which is attached to this opinion) with respect to the plenary hearing, the Court discussed in detail much of the testimony of the witness Brown at the plenary hearing, as most of his testimony was with respect to Stewart.  The Court referred to the fact that attempts had been made on the life of the witness and he was scared, and that the Court did not believe his testimony at the plenary hearing, but rather, believed his testimony at the original trials.  The Court was not critical of his changing the testimony because of what had occurred between the trial date and the date of the plenary hearing, including efforts to kill him. If we consider the testimony of Brown

**1110**

at the plenary hearing as supporting plea-bargaining, the Court would disregard it as not being true, but rather believe the testimony as set out in the original trial, when the witness testified no promises had been made.

The petitioner's claim is without merit. The petitioner is relying on the records to support his claim, so there is no need for a hearing.

Accordingly, petitioner's motion to vacate his conviction and grant a new trial is overruled in all particulars.